[No. B031219. Second Dist., Div. Five. Mar. 16, 1988.]

DELORES P. BOBELE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
VALLEY HILTON HOTEL et al., Real Parties in Interest.

**COUNSEL**

Sylvia T. Whitmore for Petitioners.

No appearance for Respondent.

No appearance for Real Parties in Interest.

## OPINION

**BOREN, J.**—Rule 7-103 of the Rules of Professional Conduct of the State Bar of California prohibits a member of the Bar from communicating "directly or indirectly with a party whom he knows to be represented by counsel upon a subject of controversy, without the express consent of such counsel." Petitioners seek review of an order of the respondent court prohibiting their attorney from communicating ex parte with present or former employees of defendant Valley Hilton. We hold that the respondent court's order was overly broad and that former employees are not "parties represented by counsel" for purposes of rule 7-103.

### FACTS

Petitioners are plaintiffs in a sex and age discrimination action against the Valley Hilton Hotel and other defendants. Plaintiffs, former waitresses at the Hilton, claim that they were forced out of their jobs when the Hilton decided to "upgrade" its restaurant facilities by replacing waitresses with waiters. In their first amended complaint, plaintiffs allege that they were told by the Hilton's assistant maitre d', Raoul Morales, that a "more elaborate menu was being planned which would include more tableside preparation," a type of service "traditionally performed by male waiters" instead of waitresses. According to plaintiffs' complaint, Mr. Morales informed the hotel's food service manager, defendant Mike Ikemiyashiko, that the hotel's waitresses were capable of handling these duties, but Mr. Ikemiyashiko (with the hotel's knowledge and consent) nonetheless "embarked on a program to replace the existing waitresses with waiters."

In April 1987, plaintiffs' counsel contacted Mr. Morales (who had long since left Hilton's employ) and asked him to meet with her and provide a witness statement. Shortly thereafter, plaintiffs' counsel received a letter from Hilton's counsel to the effect that such contact with Mr. Morales violated rule 7-103. The letter concluded, "[a]ny further contact with former or current employees without the express consent of our offices will necessitate our bringing the matter before the Court, and seeking your disqualification."

Plaintiffs then sought a protective order "declaring that they have both a legal and ethical right to interview, ex parte, (1) all former employees of defendants, both managerial and non-managerial and (2) current employees who are either non-managerial or low level managerial who do not 'speak' for the defendants."

On September 22, 1987, the respondent court denied the motion with the following order: "In ruling upon this motion, the Court's principal concern

is to avoid prejudice resulting from the unauthorized disclosure of privileged matters. To a large extent, the issue is one of discovery, over which the Court has broad control. While certainly of some interest, the question of whether certain actions represent a violation of the Rules of Professional Conduct is of less concern. An appropriate forum is provided for resolving matters of that nature."

"Consequently, whether or not ex parte communications with former employees should be allowed turns more on whether such would work some prejudice rather than whether it violates RPC 7-103 or some related ethics opinion. The court is persuaded that a real danger of prejudice does exist. Nor is it essential that plaintiffs' attorney be allowed to interview ex-employees of defendants on a private basis. Proper depositions should be noticed, affording defense counsel an opportunity to appear and object to disclosures of a privileged nature. This should not impose any significant burden on plaintiffs."

"However, it should be kept in mind at any such deposition that ex-employees are not represented by defense counsel, but are essentially third-party witnesses who may be privy to privileged information. Moreover, the scope of applicable privileges may be very limited. Unless reflecting communications with counsel or perhaps touching upon bona fide 'trade secrets,' the knowledge of an employee (present or former) is ordinarily free game for discovery purposes."

Plaintiffs' counsel filed a "motion for clarification" of the court's order, contending that "certain guidelines, not implicit in the order, should be set down to prevent the abuse of the claim of privilege and to ensure that plaintiffs right to prepare for trial is not curtailed." The court issued another order on November 4, 1987, summarizing the salient points of the September order, which were: "(1) No ex parte contact with prior or present employees is authorized. (2) They may be identified (e.g., via interrogatories, etc.) and deposed, subject to subpoena power, proper notice, etc. (3) Defendants may appear at any such deposition and object to specific questions on grounds of privilege."

Plaintiffs seek a writ of mandate directing the respondent court to grant their motion for a protective order in its entirety. We issued an alternative writ to the effect that plaintiffs could interview former, but not current, employees of Hilton, "subject to the right of defendants to seek a protective order with respect to specific witnesses." By letter dated December 17, 1987, the respondent court informed us that it respectfully elected not to change its orders, and urged us to resolve the issue raised by the petition in a published opinion. The court also declined to file a return to the alterna-

tive writ, "instead deferring to counsel for Real Parties in Interest." Real parties elected not to file a response or appear at oral argument. However, we have reviewed as part of the record herein real parties' opposition to plaintiffs' motion below.

## DISCUSSION

■ Rule 7-103 operates to protect a represented party from being taken advantage of by adverse counsel. The rule "shields the opposing party not only from an attorney's approaches which are intentionally improper, but, in addition, from approaches which are well intended but misguided. [¶] The rule was designed to permit an attorney to function adequately in his proper role and to prevent the opposing attorney from impeding his performance in such role. . . ." (*Mitton* v. *State Bar* (1969) 71 Cal.2d 525, 534 [455 P.2d 753], citing former rule 12.)

As the respondent court recognized, the ultimate purpose of rule 7-103 is to preserve the confidentiality of attorney-client communications. "[T]he [attorney-client] privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." (*Upjohn Co.* v. *United States* (1981) 449 U.S. 383, 390 [66 L.Ed.2d 584, 592, 101 S.Ct. 677].)

■ The attorney-client privilege applies to corporations. (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468 [388 P.2d 700].) ■ In *Upjohn, supra,* the United States Supreme Court held that where the opposing party is a corporation, the prohibition against ex parte contact with "a party represented by counsel" extends to all employees of the corporation, not merely those employees who constitute the corporation's "control group" of " 'officers and agents . . . responsible for directing [the company's] actions in response to legal advice.' " (*Upjohn, supra,* 449 U.S. at p. 391 [66 L.Ed.2d at p. 592].) The court reasoned that "[i]n the case of the individual client the provider of information and the person who acts on the lawyer's advice are one and the same. In the corporate context, however, it will frequently be employees beyond the control group . . . who will possess the information needed by the corporation's lawyers. Middle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." (*Ibid.*)

The court in *Upjohn* declined to address the issue of whether the attorney-client privilege should apply to communications by former employees

concerning activities during their period of employment. (449 U.S. at p. 394, fn. 3 [66 L.Ed.2d at p. 594].) However, in *Mills Land & Water Co.* v. *Golden West Refining Co.* (1986) 186 Cal.App.3d 116 [230 Cal.Rptr. 461], the court applied rule 7-103 to Carol Wynn, a former employee who remained a corporate director, and upheld the disqualification of an opposing attorney who had interviewed Wynn ex parte after Wynn had assured him that he was no longer an officer of Mills and was not represented by Mills's counsel. The court held that because Wynn was still a director of the corporation, he was "entitled to attend board meetings where the litigation may be discussed, perhaps with counsel. . . . The question is not simply whether Wynn was in a position to bind Mills in some fashion. His position makes him *potentially* privy to *privileged* information about the litigation." (186 Cal.App.3d at p. 128.)

█ We now address the issue which was left undecided by *Upjohn* and *Mills Land & Water Co.,* and hold that the prohibition against ex parte contact with a "party represented by counsel" does not extend to former employees of a corporation who were not and are not members of the corporation's "control group."

Absent a privilege (such as attorney-client or attorney work product), "counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel . . . ." (*International Business Machines Corp.* v. *Edelstein* (2d Cir. 1975) 526 F.2d 37, 42.) In determining how far to extend the protection of rule 7-103, we must weigh plaintiffs' need to obtain information which may be too expensive or impractical to collect through formal discovery against Hilton's interest in preventing disclosure of privileged attorney-client communications. The reasons for extending the rule to current employees of a corporation and to former employees who are still in the corporation's "control group" were aptly stated by the courts in both *Upjohn* and *Mills Land & Water Co.*

The concerns expressed in those two cases are less evident in the case of former employees who are not members of the "control group." These individuals are third-party witnesses who, as the respondent court correctly stated, are "fair game" for opposing counsel. They are not sufficiently identified with the corporation to be considered "parties represented by counsel," and they are less likely than current employees to be privy to privileged communications. The corporation cannot bring former employees back into the fold for purposes of a lawsuit merely because there is a risk that the former employee might disclose unfavorable facts. █ The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated

with the attorney." (*Upjohn, supra*, 449 U.S. at p. 395 [66 L.Ed.2d at p. 595].)

 We recognize Hilton's need to insure that privileged communications remain privileged. However, plaintiffs' counsel, whom Hilton has made acutely aware of the available range of sanctions, has no desire to delve into such privileged communications; she merely wants to investigate her case. Further, Hilton demonstrated its ability to adequately protect itself against the overtures of plaintiffs' counsel when it sent counsel a "warning letter" after counsel's attempt to interview Mr. Morales. Presumably, Hilton knows the identities of its former employees, including those who may be parties to privileged communications, and may seek a protective order with respect to those individuals.

We certainly appreciate the respondent court's desire to protect against even the accidental disclosure of privileged communications. However, by requiring plaintiffs to limit their contact with Hilton's ex-employees to formal discovery procedures, the respondent court has made this litigation so costly for plaintiffs that they cannot pursue their case. Not every witness's testimony is worth the price of a deposition; in fact, many of the former employees which plaintiffs want to interview may not be able to provide any relevant information at all. With respect to former employees who are not currently members of Hilton's "control group," the minimal risk that privileged communications will be disclosed does not justify the restrictions which the respondent court placed upon plaintiffs.

## CONCLUSION

(1) Plaintiffs may not contact ex parte any current employees of Hilton or any former employees who remain members of Hilton's "control group," as that term is defined in *Upjohn Co.* v. *United States, supra*, 449 U.S. 383.[1]

(2) Plaintiffs may contact ex parte any of Hilton's former employees, whether or not they were managerial employees. Plaintiffs may inquire

---

[1] Our conclusion is consistent with the State Bar of California's proposed revisions to the Rules of Professional Conduct, which omit former employees from those considered "parties" for purposes of the rule. Proposed new rule 2-100 (now rule 7-103) provides:

"RULE 2-100. COMMUNICATION WITH A REPRESENTED PARTY.

(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

(B) For purposes of this rule, a "party" includes:

(1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or

(2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person which may be binding on such entity or which may be a basis of a claim or defense involving that entity."

about relevant facts but not about any privileged communications concerning those facts. Hilton may seek a protective order with respect to any former employee who Hilton knows or suspects is privy to privileged information and believes there is a real danger that such information might be disclosed if the employee is interviewed ex parte.

At oral argument, plaintiffs' counsel informed us that both she and counsel for Hilton were confused by the wording of the alternative writ because it did not inform counsel in concise terms just when a protective order would be appropriate. However, our intention is to set guidelines, not to anticipate every situation which might arise during the course of the litigation. When in doubt, the parties should resort to the capable hands of the respondent court.

Let a peremptory writ of mandate issue directing the respondent court to vacate its orders of September 22, 1987, and November 4, 1987, and enter a new and different order consistent with the views expressed in this opinion.

Ashby, Acting P. J., and Feinerman, J.,* concurred.

---

* Retired Presiding Justice of the Court of Appeal setting under assignment by the Chairperson of the Judicial Council.