[No. B061732. Second Dist., Div. One. May 27, 1992.]

NALIAN TRUCK LINES, INC., Plaintiff and Respondent, v.
NAKANO WAREHOUSE & TRANSPORTATION CORP., Defendant and
Appellant.

COUNSEL

Crosby, Heafey, Roach & May, Ezra Hendon, Michael J. Belcher, John L. Johnson III, Valarie Mark and James Martin for Defendant and Appellant.

Morris Shechter and Wanda Grasse for Plaintiff and Respondent.

## Opinion

**DEVICH, Acting P. J.—** ■■ ■ Is it proper for an attorney to communicate ex parte with a former member of a corporate adversary's "control group"?[1] We conclude that rule 2-100 of the State Bar Rules of Professional Conduct[2] permits such communications. Accordingly, we reverse the trial court's order disqualifying a law firm which engaged in such conduct.

### Background

On September 16, 1987, Nalian Truck Lines, Inc. (NTL), filed a complaint against Nakano Warehouse & Transportation Corp. (Nakano) alleging that, due to a fire caused by Nakano's negligence in the building occupied by both companies, NTL sustained damages including loss of the use of its premises and loss of current and potential business.

Between late 1982 and February 1988, David Corson served as NTL's general manager.[3] On February 16, 1988, NTL terminated Corson's employment. At the following shareholder's meeting, held on March 8, 1988, Corson was removed as a director of NTL and replaced by Nalian's sister, Martha Arakalian.

In July 1988, Corson contacted Nakano's insurer in order to obtain the name of the law firm representing Nakano in NTL's action against it. He was not given any information, but left his telephone number with the insurer.

Two years later, John Johnson, an associate with Crosby, Heafey, Roach & May (Crosby), the law firm representing Nakano, contacted Corson and arranged to meet with him. Neither NTL nor its counsel had knowledge of Johnson's conversations with Corson until June 10, 1991, when this fact was revealed at Corson's deposition.

On August 20, 1991, NTL filed a motion to disqualify Nakano's counsel based on the ex parte communications with Corson. In support of this motion, Nalian filed a declaration wherein he stated, in pertinent part:

---

[1] A corporation's control group consists of " ' "officers and agents . . . responsible for directing [the company's] actions in response to legal advice." ' " (*Bobele* v. *Superior Court* (1988) 199 Cal.App.3d 708, 712 [245 Cal.Rptr. 144], quoting *Upjohn Co.* v. *United States* (1981) 449 U.S. 383, 391 [66 L.Ed.2d 584, 592, 101 S.Ct. 677].)

[2] All rule references are to the State Bar Rules of Professional Conduct.

[3] Corson is also a minority shareholder of NTL, holding 25 percent of its shares. The remaining 75 percent of NTL's shares, and therefore control of the company, belong to Donald Nalian.

"2. David Corson was a former employee of [NTL] working in the capacity as the General Manager of the Corporation as well as being an Officer and Director. He had complete control of all financial books and records in his capacity as General Manager as well as the authority to contact our customers in warehousing and transportation.

"3. From September 17, 1986 to February 18, 1988, . . . David Corson was authorized to supply evidentiary information to our attorney, Morris Shechter, in the preparation of a lawsuit against [Nakano].

"On numerous occasions throughout that time frame, I actively discussed with David Corson the theories the Corporation would pursue against [Nakano] in recovering damages we sustained as a result of the chemical fire.

"Within that time frame, I discussed with David Corson, our customers, anticipated profits and the increase in revenues we anticipated to realize but for the chemical fire.

"4. David Corson, in his capacity as General Manager and in charge of our Books and Records, was the key employee in supplying information that was eventually used for ascertaining our computations of losses and anticipated losses."

In opposition to the motion, Johnson filed a declaration wherein he indicated that he never discussed "attorney-client privileged information" with Corson, instead focusing on "the underlying facts related to the fire loss, [NTL's] customers and lost profits and the alleged fraud."[4]

In a supplemental declaration, Nalian stated that "Corson was authorized to assist [NTL's] Corporate Counsel, Morris Shechter, in the preparation of a lawsuit against Nakano for loss of profits [NTL] sustained as a result of a chemical fire." Shechter's declaration provided that "Corson actively assisted [him] with confidential information specifically related to the processing of this civil action."

On September 5, 1991, the trial court granted NTL's motion. The formal order, filed on September 30, 1991, provided: "1) [NTL's] Motion for Order

[4]In another portion of this declaration, Johnson indicated that, in July 1988, Corson "stated that [NTL's] two major customers . . . had terminated their contracts with [NTL] either prior to the fire or for reasons unrelated to the fire."

for Disqualification of Opposing Counsel and its Law Firm is granted as prayed; 2) [Crosby] and its attorneys are prohibited from assisting or representing Nakano in this action; 3) Nakano's substituted counsel is prohibited from reviewing any of the documentation supplied to Nakano's current counsel by David Corson." On October 10, 1991, the action was stayed pending the resolution of this appeal.

## DISCUSSION

■ " 'Trial courts in civil cases have the power to order disqualification of counsel when necessary for the furtherance of justice. [Citations.] Exercise of that power requires a cautious balancing of competing interests. The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel . . . . [Citations.]' [Citation.] Determination of the motion lies within the trial court's discretion [citation], but judicial discretion is a legal discretion subject to the limitations of the legal principles governing the subject of its action, and subject to reversal on appeal where no reasonable basis for the action is shown. [Citation.]" (*Mills Land & Water Co.* v. *Golden West Refining Co.* (1986) 186 Cal.App.3d 116, 126 [230 Cal.Rptr. 461], italics omitted.)

■ Nakano's argument is straightforward—since Corson was neither a current employee nor a current member of NTL's control group at the time of the communications, Crosby was not prohibited by rule 2-100[5] from engaging in ex parte communications with him. Nakano's argument is supported

---

[5]Rule 2-100 provides:

"(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

"(B) For purposes of this rule, a 'party' includes:

"(1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or

"(2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

"(C) This rule shall not prohibit:

"(1) Communications with a public officer, board, committee, or body;

by the drafter's comment to rule 2-100, which provides in relevant part: "Paragraph (B) is intended to apply only to persons employed *at the time of the communication.*" (Drafter's Notes, rule 2-100, 23 West's Cal. Code Ann. Rules, pt. 2 (1992 Supp.) p. 572, italics added.) If the drafters of rule 2-100 had intended to prohibit ex parte communications with all former and current control group employees, they would have expressed this intention in the comment.

Nakano's argument is further bolstered by the case law interpreting former rule 7-103,[6] the predecessor to rule 2-100. In *Bobele* v. *Superior Court, supra,* 199 Cal.App.3d 708, counsel for the plaintiffs in a gender and age discrimination action sought to interview former and present employees of the defendant. In denying the plaintiffs' application for a protective order, the trial court limited the plaintiffs to depositions of the former and current employees in the presence of defense counsel. The Court of Appeal concluded that the trial "court's order was overly broad and that former employees are not 'parties represented by counsel' for purposes of [former] rule 7-103." (*Id.* at p. 710.) The court explained:

"Absent a privilege (such as attorney-client or attorney work product), 'counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel . . . .' [Citation.] In determining how far to extend the protection of rule 7-103, we must weigh [the] plaintiffs' need to obtain information which may be too expensive or impractical to collect through formal discovery against [the defendant's] interest in preventing disclosure of privileged attorney-client communications. The reasons for extending the rule to current employees of a corporation and to former employees who are still in the corporation's 'control group' were aptly stated by the courts in both *Upjohn* [*Co.* v. *United States, supra,* 449 U.S. 383[7]] and

"(2) Communications initiated by a party seeking advice or representation from an independent lawyer of the party's choice; or

"(3) Communications otherwise authorized by law."

[6]Former rule 7-103 provided: "A member of the State Bar shall not communicate directly or indirectly with a party whom he knows to be represented by counsel upon a subject of controversy, without the express consent of such counsel. This rule shall not apply to communications with a public officer, board, committee or body."

[7]In *Upjohn Co.* v. *United States, supra,* 449 U.S. 383, the United States Supreme Court, interpreting the federal attorney-client privilege as applied to corporations, found the control group test to be too confining since "it will frequently be employees beyond the control group . . . who will possess the information needed by the corporation's lawyers." (*Id.* at p. 391 [66 L.Ed.2d at p. 592].)

The drafters of rule 2-100, cognizant of *Upjohn's* holding, nonetheless decided to retain the control group test. In its memorandum entitled Request That the Supreme Court of California Approve Amendments to the Rules of Professional Conduct of the State Bar of California, and

*Mills Land & Water Co.* [v. *Golden West Refining Co., supra,* 186 Cal.App.3d 116[8]].

"The concerns expressed in those two cases are less evident in the case of former employees who are not members of the 'control group.' These individuals are third-party witnesses who . . . are 'fair game' for opposing counsel. They are not sufficiently identified with the corporation to be considered 'parties represented by counsel,' and they are less likely than current employees to be privy to privileged communications. The corporation cannot bring former employees back into the fold for purposes of a lawsuit merely because there is a risk that the former employee might disclose unfavorable facts. The attorney-client privilege 'only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.' (*Upjohn, supra,* 449 U.S. at p. 395 [].)

"We recognize [the defendant's] need to insure that privileged communications remain privileged. . . . Presumably, [the defendant] knows the identities of its former employees, including those who may be parties to privileged communications, and may seek a protective order with respect to those individuals." (199 Cal.App.3d at pp. 713-714; see also *Mills Land & Water Co.* v. *Golden West Refining Co., supra,* 186 Cal.App.3d at pp. 128-129 [a *current* director of a corporation may not be contacted ex parte since "[h]is position makes him *potentially* privy to *privileged* information about the litigation" (original italics, fn. omitted) and his statements may be binding on the corporation].)

Similarly, in *Triple A Machine Shop, Inc.* v. *State of California* (1989) 213 Cal.App.3d 131 [261 Cal.Rptr. 493], a case that interpreted rule 2-100, the

Memorandum and Supporting Documents in Explanation, submitted in December 1987, the Board of Governors of the State Bar of California noted: "[T]he large number of comments received on [proposed] rule [2-100], which proposed prohibiting members from communicating directly with the employee of a corporate opponent, stressed the hardship that such a prohibition would create on certain litigants. The employment discrimination bar, both public and private, pointed out that such a prohibition would make it virtually impossible to investigate claims prior to filing a suit, thus requiring more lawsuits to be filed and costly depositions taken. In addition, certain administrative proceedings have no mechanisms for formal discovery at all, thus making it possible that some potential witnesses would never be interviewed at all. As a result of these comments and many others, it is proposed that paragraph (B) utilize the 'control group test.' " (*Id.* at p. 26.)

[8]In *Mills Land & Water Co.* v. *Golden West Refining Co., supra,* 186 Cal.App.3d 116, the court concluded that former rule 7-103 prohibited ex parte contact with a corporation's former president who remained on the board of directors. The court stated: "As a current director, [the former president] is entitled to attend board meetings where the litigation may be discussed, perhaps with counsel. . . . The question is not simply whether [the former president] was in a position to bind [the corporation] in some fashion. His position makes him potentially privy to privileged information about the litigation." (*Id.* at p. 128, italics and fn. omitted.)

trial court issued a preliminary injunction enjoining the state from contacting any current employees or former employees who were still members of the control group of a corporation the state was prosecuting. The Court of Appeal reversed. Citing the drafter's comment to rule 2-100, quoted above, the court stated: "Thus, rule 2-100 permits opposing counsel to initiate ex parte contacts with unrepresented former employees, and present employees (other than officers, directors or managing agents) who are not separately represented, so long as the communication does not involve the employee's act or failure to act in connection with the matter which may bind the corporation, be imputed to it, or constitute an admission of the corporation for purposes of establishing liability." (213 Cal.App.3d at p. 140.)

Moreover, with regard to the ethical boundaries of an attorney's conduct, a bright line test is essential. As a practical matter, an attorney must be able to determine beforehand whether particular conduct is permissible; otherwise, an attorney would be uncertain whether the rules had been violated until, as in the case at bench, he or she is disqualified. Unclear rules risk blunting an advocate's zealous representation of a client. This is not to say that privileged matter should not be protected. ■ Rather, it is incumbent upon a party who knows that its former employees, including former control group employees, possess privileged information to seek a protective order. (See *Bobele* v. *Superior Court, supra,* 199 Cal.App.3d at p. 714.)[9]

■ Finally, to the extent that NTL based its motion for disqualification on a violation of the attorney-client privilege, separate and apart from the purported violation of rule 2-100, we conclude that it failed to meet its burden of proof.

■ "The attorney-client privilege provides for the nondisclosure of confidential communications between a lawyer and his/her client. (Evid. Code, § 954.) The communication must be intended by the client to be treated in confidence. Confidential communications include not only information

---

[9]Our conclusion that rule 2-100 permits ex parte communications with Corson is unaffected by his status as a minority shareholder. Initially, we note that NTL, while referring to Corson's status as a minority shareholder in its brief, does not argue anything other than that Corson is a member of the control group since "[h]e is a present shareholder, and a former general manager, officer and director." (*Schaeffer Land Trust* v. *San Jose City Council* (1989) 215 Cal.App.3d 612, 619, fn. 2 [263 Cal.Rptr. 813] [" 'A point which is merely suggested by [a party's] counsel, with no supporting argument or authority, is deemed to be without foundation and requires no discussion.' [Citation.]"].) Moreover, even if NTL had provided supporting argument, it did not raise the point before the trial court, and has therefore waived the issue. (*Richmond* v. *Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].) Finally, since Nalian owns 75 percent of NTL, he has complete control of the company, and Corson's 25 percent ownership is rendered meaningless in the context of this case.

given from a client to the attorney, but also the legal opinions and advice tendered by the attorney. (Evid. Code, § 952.)

"Once a party claims the attorney-client privilege, the communication sought to be suppressed is presumed confidential. A party opposing the privilege has the burden of proof to show the communication is one not made in confidence. (Evid. Code, § 917.) However, the party claiming privilege has the burden to show that the communication sought to be suppressed falls within the terms of the statute. [Citations.] It is also established that a communication which was not privileged to begin with may not be made so by subsequent delivery to the attorney. [Citation.]" (*Alpha Beta Co.* v. *Superior Court* (1984) 157 Cal.App.3d 818, 824-825 [203 Cal.Rptr. 752].)

In the case at bench, the showing made by NTL at best demonstrated that Corson possessed certain information protected by the attorney-client privilege,[10] but was wholly inadequate to prove that particular protected communications were divulged by Corson.

## DISPOSITION

The order disqualifying Crosby, Heafey, Roach & May as Nakano Warehouse & Transportation Corp.'s counsel of record is reversed. Nakano Warehouse & Transportation Corp. shall recover its costs on appeal.

Ortega, J., and Vogel, J., concurred.

A petition for a rehearing was denied June 24, 1992, and respondent's petition for review by the Supreme Court was denied Ausgust 20, 1992. Panelli, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[10]As previously noted, the declarations submitted in support of the motion to disqualify included the following statements: "Corson was authorized to supply evidentiary information to [NTL's] attorney, Morris Shechter, in the preparation of a lawsuit against [Nakano]"; Nalian "discussed with David Corson, our customers, anticipated profits and the increase in revenues we anticipated to realize but for the chemical fire"; "Corson, in his capacity as General Manager and in charge of [NTL's] Books and Records, was the key employee in supplying information that was eventually used for ascertaining [NTL's] computations of losses and anticipated losses"; "Corson was authorized to assist [NTL's] Corporate Counsel, Morris Shechter, in the preparation of a lawsuit against Nakano for loss of profits [NTL] sustained as a result of a chemical fire"; and "Corson actively assisted [Shechter] with confidential information specifically related to the processing of this civil action."