[No. D043922. Fourth Dist., Div. One. Aug. 16, 2004.]

LA JOLLA COVE MOTEL AND HOTEL APARTMENTS, INC., Petitioner,
v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
HELEN H. JACKMAN, as Trustee, etc., et al., Real Parties in Interest.

774

**COUNSEL**

Sparber Rudolph Annen, Richard J. Annen and Todd R. Gabriel for Petitioner.

No appearance for Respondent.

Mazzarella, Dunwoody & Caldarelli, Steven A. Micheli, Michael D. Fabiano; Soden & Steinberger, Stephen R. Soden and Jason W. Coberly for Real Parties in Interest.

**OPINION**

NARES, J.—■ In this case we are presented with the issue of whether it is appropriate under the California State Bar Rules of Professional Conduct, rule 2-100[1] for attorneys to contact directors for a represented corporation where the directors' separate counsel consents to the contact, but counsel for

---

[1] All further statutory references are to the California State Bar Rules of Professional Conduct unless otherwise specified.

the corporation does not. We conclude that under the facts of this case, such contact is not barred by rule 2-100. We further conclude that even if there were a violation of rule 2-100, the court was correct not to order the disqualification of the offending attorneys as there is no evidence that they obtained any confidential information that could give their clients an unfair advantage or impact upon the fairness of the trial or integrity of the judicial system.

This action involves a complaint for dissolution of a corporation, the petitioner La Jolla Cove Motel and Hotel Apartments, Inc. (La Jolla Cove), in which the real party in interest Helen H. Jackman (Jackman), as trustee for the Helen H. Jackman Trust, owns a minority (one-third) interest, and of which her son Lawrence Jackman, Jr. (Lawrence Jackman) was formerly the president (collectively the Jackmans). La Jolla Cove brought a motion to disqualify two members of the law firm representing the Jackmans, Steven Micheli and Michael Fabiano, on the ground that they had had improper ex parte contact with two directors of La Jolla Cove who had been elected to the board by Jackman. In support of the motion, La Jolla Cove pointed to two declarations from the directors that the Jackmans had submitted in support of their application for appointment of a receiver for La Jolla Cove. La Jolla Cove asserted that the Jackmans' counsel's contacts violated rule 2-100.

The court denied La Jolla Cove's motion, finding that (1) assuming counsel made the allegedly improper contacts, there was no evidence that they obtained confidential attorney-client communications; and (2) disqualification was not warranted even if rule 2-100 was violated where there was no showing of disclosure of confidential communications, an unfair advantage having been obtained, or impact upon the fairness of the trial or integrity of the judicial system.

La Jolla Cove filed this petition for writ of mandate, seeking to overturn the court's ruling on the grounds that (1) counsel violated rule 2-100's absolute prohibition against ex parte contacts with active directors of a corporation; and (2) the court should have disqualified attorneys Micheli and Fabiano because of their violation of section 2-100. The petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Nature of Dispute*

La Jolla Cove is a family business, in which Jackman owns a minority one-third interest. The other two-thirds interest is owned by one of Jackman's siblings and the two children of another sibling. Jackman and the other family members are each entitled to vote their one-third interest to appoint two

persons to La Jolla Cove's board of directors. Lawrence Jackman was formerly the president of La Jolla Cove and general manager of two hotels owned by La Jolla Cove. Several disputes have arisen among the family members, resulting in three civil actions being filed. In one action, La Jolla Cove sought to recover monies that Lawrence Jackman allegedly improperly took from La Jolla Cove. In another, Lawrence Jackman filed a derivative action against the majority shareholders/directors of La Jolla Cove for their allegedly improper actions in running the corporation. In this action, the Jackmans seek a dissolution of La Jolla Cove, appointment of a receiver and an accounting. In their complaint, the Jackmans alleged that the family members with a controlling two-thirds interest in La Jolla Cove have improperly excluded them and the two directors they appointed to represent their interests, Behram Baxter and Tom Durisoe, from any role in the company. The Jackmans also alleged that under control of the other family members, the hotel properties La Jolla Cove owns had been mismanaged and deteriorated to such an extent that La Jolla Cove was in danger of financial collapse.

### B. *Alleged Improper Attorney Contacts*

After attorney Micheli began his representation of the Jackmans, he sent a letter to La Jolla Cove's attorney, Richard J. Annen, discussing the parties' disputes concerning the running of that entity and a related partnership. In that letter, Micheli stated, "In light of the fact that you have indicated in your letter that you represent the corporation and the partnership, you have not indicated that you represent the individuals, and it would be clearly a conflict of interest for you to represent the entities as well as one side of the disputing factions of the entities, I am forwarding a copy of this letter to some of the other family members. If the other family members are represented by counsel, I would appreciate it if they could contact me so that I could talk to their counsel." Micheli sent a copy of the letter to the controlling family members and directors of La Jolla Cove. Annen objected to Micheli sending the letter to La Jolla Cove directors, calling that action "ethically question-able," and told Micheli that the directors had advised him to tell Micheli not to contact them directly. Micheli responded in a letter that he believed it was proper to contact the directors because Annen only represented the corporation, not the individual directors. Annen in turn sent a letter to Micheli advising him that any further attempt to contact any officers or directors of La Jolla Cove would be considered a violation of rule 2-100.

Thereafter, Lawrence Jackman sent a letter to Krista Baroudi, president and chief executive officer of La Jolla Cove, concerning possible settlement offers. Annen accused Micheli of directing Lawrence Jackman to send the letter. Micheli responded by denying that he had directed Lawrence Jackman

to send the letter and questioned Annen's ability to represent individual officers and directors given the dispute among the parties concerning the operation of La Jolla Cove.

After they filed their complaint, the Jackmans brought an ex parte application for appointment of a receiver. In support of the application, counsel for the Jackmans submitted declarations from the Jackmans' representatives on the board of directors of La Jolla Cove, Durisoe and Baxter. In both declarations, they explained that they were elected as board members by a vote of shares owned by the Jackmans. Their declarations discussed the alleged mismanagement of the hotel properties owned by La Jolla Cove, and shareholder and directors meetings. They asserted that improper agreements were made by the majority board members to relieve non-Jackman family members of liability for using corporate assets and that the majority on the board refused to allow them to participate in the running of La Jolla Cove.

### C. *Motion to Disqualify*

La Jolla Cove brought a motion to disqualify the Jackmans' attorneys Micheli and Fabiano, asserting that they had engaged in improper contacts with La Jolla Cove directors and officers without the consent of La Jolla Cove's attorney, in violation of rule 2-100. La Jolla Cove asserted that the Jackmans' attorneys could not contact any board members of that entity, including ones they elected to the board, because the corporation was represented by counsel. As evidence of a violation of rule 2-100, La Jolla Cove pointed to the declarations of Durisoe and Baxter. While La Jolla Cove did not base its motion upon the earlier letters by Micheli and Lawrence Jackman, they pointed to those as evidence that improper contacts would continue if Micheli and Fabiano were not disqualified.

The Jackmans opposed the motion to disqualify, arguing that (1) Lawrence Jackman obtained the declarations of Durisoe and Baxter on his own without direction of counsel; (2) Durisoe and Baxter were not represented by La Jolla Cove's counsel within the meaning of rule 2-100; (3) Durisoe and Baxter were represented by separate counsel who did not object to the Jackmans' use of their declarations; (4) La Jolla Cove had not provided any evidence that any privileged communications were disclosed by Durisoe and Baxter to Fabiano or Micheli; (5) there was no continuing effect of any allegedly improper contact; and (6) disqualification would be inequitable.

Micheli filed a declaration in support of the opposition, stating that Lawrence Jackman delivered the declarations of Durisoe and Baxter, and Micheli had his secretary prepare the caption pages. He also stated that he never had any contact with Durisoe or Baxter concerning their declarations,

and he had only spoken with Baxter once at a mediation, where they only introduced themselves. He had only spoken with Durisoe briefly at that mediation and at a meeting where he discussed representation of Durisoe's wife. Micheli also stated that he spoke with counsel for Baxter and Durisoe and counsel did not object to him using their declarations in support of the motion for appointment of a receiver. Fabiano also filed a declaration, wherein he stated that he did not have any contact with Durisoe or Baxter concerning their declarations. The only time he met either Baxter or Durisoe was at a mediation. Lawrence Jackman filed a declaration in opposition to the motion to disqualify, stating that he obtained the declarations of Baxter and Durisoe, he wrote them himself, he had no input from Micheli or Fabiano, and he obtained signatures on the declarations from Durisoe and Baxter. The Jackmans also submitted deposition testimony from Baxter, wherein he denied ever meeting or being contacted by Micheli or Fabiano, and where he stated he had only met Micheli at a mediation.

La Jolla Cove filed reply papers wherein it asserted that it was not believable that Durisoe's and Baxter's declarations were obtained without direction from Micheli and/or Fabiano. La Jolla Cove also claimed that as active directors, Durisoe and Baxter was deemed to be represented by La Jolla Cove's attorneys and could not be contacted for any purpose. Counsel for La Jolla Cove denied that Durisoe or Baxter was excluded from management of La Jolla Cove, stating in a declaration that since their election to the board, they had "attended and participated in regularly scheduled Board of Director meetings" and had voted on "a variety of topics." Attorney Annen also stated in that declaration that Durisoe and Baxter, as directors of La Jolla Cove, had received "confidential/attorney-client privileged case status reports relating to litigation concerning La Jolla Cove and [Lawrence Jackman]."[2]

D. *Court's Ruling*

In February 2004 the court issued its order denying La Jolla Cove's motion to disqualify attorneys Micheli and Fabiano. In doing so, the court found that "[r]ule 2-100 establishes the rule that opposing counsel may not contact presently employed officers, directors or managing agents without the permission of corporate counsel, or the permission of separate counsel in cases where the officer, director or managing agent is represented by personal counsel." The court further found that "[a]ssuming, for the sake of argument, that plaintiff's counsel contacted directors Durisoe and Baxter (as opposed to

---

[2] La Jolla Cove filed a supplemental declaration in support of its motion two days before the court issued its ruling. The court refused to consider that declaration. Because La Jolla Cove does not assert the court erred in refusing to consider that late-filed declaration, we need not address it on this appeal.

contact by Mr. Jackman which is not prohibited by Rule 2-100) without the permission of their personal counsel, there is no evidence that plaintiffs obtained confidential attorney client communications during these meetings. . . . It is questionable whether the drastic measure of disqualification is ever warranted by showing only a violation of rule 2-100, without an additional showing that the violation led to the disclosure of confidential communications protected by the attorney client privilege, or created an unfair advantage, or impacted the fairness of the trial or the integrity of the judicial system."

La Jolla Cove filed a petition seeking to overturn the court's ruling. We issued an order to show cause why the petition should not be granted.

### E. *Motion to Dismiss Writ*

After we issued an order to show cause in this matter, the Jackmans filed a motion to dismiss the petition as moot. They asserted that because attorneys Micheli and Fabiano had substituted out as their counsel of record in this matter, the appeal was moot as the relief requested by La Jolla Cove, disqualification of Micheli and Fabiano, could no longer be granted. La Jolla Cove opposed the motion to dismiss, arguing that the matter was not moot as Micheli and Fabiano might still work on the case behind the scenes and because they represented the Jackmans in two other actions involving the same parties. They also asserted that even if the appeal was technically moot, this court should nevertheless exercise its discretion to hear it on the merits because the issues were likely to recur among the parties and the appeal posed an issue of public interest that was likely to recur.

### DISCUSSION

### I. *Mootness*

An appeal will be dismissed if, by reason of events, it has become moot and impossible for the court to render effective judgment for a party. (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].) As the Court of Appeal stated in *Wilson v. L. A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453 [246 P.2d 688], " 'although a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character, it becomes a moot case or question which will not be considered by the court.' " However, notwithstanding the fact that a case has been rendered moot by intervening events, we retain the discretion to review such an appeal on the merits where the appeal poses an issue of broad public

interest that is likely to recur. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].)

Here, this case has been rendered technically moot because, as attorneys Micheli and Fabiano no longer represent the Jackmans in this action, we cannot order their disqualification. However, we will nevertheless exercise our discretion to resolve the matter on the merits because the appeal raises an issue of public interest that is likely to recur: whether counsel may contact a director for an opposing corporation upon permission of the director's counsel or only upon consent of the corporation's counsel.

## II. *Motion to Disqualify*

### A. *Standard of Review*

We review the court's decision to disqualify the Jackmans' counsel under the abuse of discretion standard. (*Nalian Truck Lines, Inc. v. Nakano Warehouse & Transport Corp.* (1992) 6 Cal.App.4th 1256, 1261 [8 Cal.Rptr.2d 467].) This discretion is " 'subject to the limitations of the legal principles governing the subject of its action, and subject to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' [Citation.]" (*Ibid.*)

### B. *Analysis*

#### 1. *Was the consent of corporate counsel required to contact the directors?*

Recently, in *Snider v. Superior Court* (2003) 113 Cal.App.4th 1187 [7 Cal.Rptr.3d 119] (*Snider*), we explained that it was important to have a bright-line test to determine the ethical boundaries of an attorney's contact with opposing parties. " '[O]therwise, an attorney would be uncertain whether the rules had been violated until . . . he or she is disqualified. Unclear rules risk blunting an advocate's zealous representation of a client.' " (*Id.* at pp. 1197–1198, quoting *Nalian Truck Lines, Inc. v. Nakano Warehouse & Transport Corp., supra,* 6 Cal.App.4th at p. 1264.) In *Snider,* we examined whether a former employee's counsel violated rule 2-100, which prohibits an attorney from communicating with an officer, director, or managing agent of a corporation represented by counsel about the subject of the representation without the consent of the other lawyer. (*Snider, supra,* 113 Cal.App.4th at p. 1209.) In that case, we were presented with the issue of whether counsel for an employee sued by his former employer violated rule 2-100(B)(1) by conducting an ex parte interview with a sales manager and a production department supervisor who worked for the employer. (*Snider, supra,* at

p. 1209.) We held in *Snider* that because there was no evidence that the two interviewed employees were managing agents of their corporate employer, there was no violation of rule 2-100 and the lower court erred in disqualifying counsel.

Here, we are presented with a related issue. The issue we are presented with is whether an attorney may contact a director for an opposing corporation when that director's separate counsel gives the attorney permission, but the corporation's counsel has not. Resolution of this issue requires an examination of the relevant ethical rules and cases interpreting their terms.

Rule 2-100 provides in part:

"(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, *unless the member has the consent of the other lawyer.* [¶] (B) For purposes of this rule, a 'party' includes: [¶] (1) An officer, *director*, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or [¶] (2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." (Italics added.)

American Bar Association (ABA) Model Rules of Professional Conduct, rule 4.2 (Model Rule 4.2) contains a similar proscription against unauthorized contacts with represented persons or entities, unless counsel consents:

"In representing a client, a lawyer shall not communicate about the subject matter of the representation with a person the lawyer knows to be represented by another lawyer in the matter, *unless the lawyer has the consent of the other lawyer* or is authorized to do so by law or a court order." (Italics added.)

Further, comment 7 to ABA Model Rule 4.2 provides that, in the case of a represented corporation, "If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this [r]ule."[3]

---

[3] Although California has not adopted the model rules, courts have found the rules "helpful and persuasive in situations where the coverage of our Rules is unclear or inadequate." (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 418, p. 508.)

■ Thus, although directors such as Durisoe and Baxter ordinarily would be deemed represented members of the corporation that may not be contacted, rule 2-100 carves out an exception where the represented party's separate counsel consents to the contact. Comment 7 to Model Rule 4.2 is even more specific, providing that if members of a corporation such as Durisoe and Baxter are represented by separate counsel, the permission of that counsel, as opposed to corporate counsel, is sufficient to comply with the rule. From the texts of rule 2-100 and Model Rule 4.2, as further explained by comment 7 to Model Rule 4.2, the answer to the issue posed by this petition would appear clear: Because counsel for the Jackmans obtained the permission of Durisoe and Baxter's separate counsel to use their declarations, there was no improper contact with a represented party.

However, La Jolla Cove asserts that notwithstanding Durisoe and Baxter's representation by separate counsel in this litigation and separate counsels' consent to the alleged contacts, as active directors of the corporation, who are potentially privy to confidential communications, the Jackmans' counsel was absolutely prohibited from contacting them without permission from *corporate* counsel. We conclude that given that this litigation is brought by minority shareholders seeking a dissolution of their corporation, Durisoe and Baxter's role as directors is to represent those minority shareholders' interests in the corporation, and as Durisoe and Baxter are adverse to the corporation with regard to the subject of this litigation, rule 2-100 does not prohibit the alleged contact as Durisoe and Baxter's separate counsel consented.

■ In representing a corporation, an attorney's client is the *corporate entity*, not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests. (*Meehan v. Hopps* (1956) 144 Cal.App.2d 284, 293 [301 P.2d 10]; *Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 705 [282 Cal.Rptr. 627] [corporate attorney owed no duty to minority shareholder in arranging elimination of preemptive rights to allow majority shareholders to increase their ownership]; Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2004) ¶ 6:3, p. 6-2.) In this regard, rule 3-600 provides in part:

"(A) *In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself,* acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement. [¶] . . . [¶] (D) *In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a member shall explain the identity of the client for whom the member acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom*

*the member is dealing. The member shall not mislead such a constituent into believing that the constituent may communicate confidential information to the member in a way that will not be used in the organization's interest if that is or becomes adverse to the constituent.* [¶] (E) A member representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, *subject to the provisions of rule 3-310.* If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members." (Italics added.)

Conflicts of interest between a corporation and its officers, directors and shareholders are particularly problematic for corporate counsel where, as here, the corporation is a closely held one, with few shareholders. (Friedman, Cal. Practice Guide: Corporations, *supra,* ¶ 6:3.1, pp. 6-2 to 6-3.) Corporate counsel may develop a fiduciary relationship with individual shareholders or directors. However, even in that situation, the attorney's ultimate loyalty is to the corporation, not individual shareholders, officers or directors. (*Ibid.*) Thus, where an adversarial setting presents itself, pitting the corporation against one or more of its officers, directors or shareholders, corporate counsel may still represent the corporation against those individuals, even though he or she may have received confidential information about them in the course of representing the corporation. (*Ibid.; Meehan v. Hopps, supra,* 144 Cal.App.2d at p. 293.)[4]

Further, once a conflict has arisen between a corporation and one or more of its officers, directors or shareholders, corporate counsel may not simultaneously represent the corporation and the adverse officer, director or shareholder. In this regard, rule 3-310(C) provides as follows: "A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

Thus, where a shareholder has filed an action questioning its management or the actions of individual officers or directors, such as in a shareholder derivative or the instant dissolution action, corporate counsel cannot represent

---

[4] For a more in-depth analysis of potential conflicts that may arise for attorneys representing small closely held corporations such as La Jolla Cove, see Friedman, Cal. Practice Guide: Corporations, *supra,* chapter 6.

both the corporation and the officers, directors or shareholders with which the corporation has a conflict of interest. (*Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 74–75 [67 Cal.Rptr.2d 857]; Friedman, Cal. Practice Guide: Corporations, *supra,* ¶ 6:612, p. 6-131; 1 Witkin, Cal Procedure, *supra,* Attorneys, § 139, p. 182.)[5]

Likewise, in this case it is undisputed that an actual conflict has arisen between the Jackmans and La Jolla Cove, its majority shareholders, and their representative on the board of directors. La Jolla Cove has sued Lawrence Jackman, alleging he improperly took monies from the corporation. The Jackmans in turn have sued La Jolla Cove twice, once in a shareholder derivative action, and in this action seeking dissolution of the corporation. In these actions the Jackmans allege various improprieties by the majority shareholders/directors, including excluding them and their representatives on the board of directors from any role in managing the corporation.

Likewise Durisoe and Baxter are adverse to La Jolla Cove. They were elected by the Jackmans to represent their interests as minority shareholders. They both allege that the majority has engaged in improper actions, negligently maintained the hotel properties La Jolla Cove owns, and that they have been "frozen out" of the management of the corporation. They have both retained separate counsel to represent them in these disputes.

La Jolla Cove attempts to argue that Durisoe and Baxter are not really adverse as their only role is as directors, not shareholders, and thus their only loyalty is to the corporation. However, this ignores the fact that they were elected to the board by the Jackmans and that they allege that the representatives of the majority shareholders have engaged in improper transactions and have excluded them from any role in overseeing the corporation. In fact, La Jolla Cove submitted no declaration from the majority shareholders or board members denying the veracity of Durisoe's and Baxter's declarations.

Under the circumstances, because counsel for La Jolla Cove's duties lie with the entity, not its directors, and an actual conflict has arisen between La Jolla Cove and the minority representatives Durisoe and Baxter, La Jolla Cove's counsel cannot be deemed to be their counsel. In fact, such a

---

[5] One earlier California case held that prior to an adjudication that the corporation is entitled to relief against officers or directors with which it has a dispute, the same attorney may represent both. (*Jacuzzi v. Jacuzzi Brothers, Inc.* (1966) 243 Cal.App.2d 1, 35–36 [52 Cal.Rptr. 147].) However, *Jacuzzi* has been criticized as "illogical and against the weight of authority" (*Forrest v. Baeza, supra,* 58 Cal.App.4th at p. 75), and later cases bar dual representation in all cases involving actual conflicts. (*In re Oracle Securities Litigation* (N.D.Cal. 1993) 829 F.Supp. 1176, 1186, 1188, fn. 8; 1 Witkin, Cal. Procedure, *supra,* Attorneys, § 139, pp. 182–184; Patton, *Disqualification of Corporate Counsel in Derivative Actions: Jacuzzi and the Inadequacy of Dual Representation* (1979) 31 Hastings L.J. 185.)

representation would be forbidden under ethical rules. (Rule 3-600.) Therefore, to comply with the provisions of rule 2-100, the Jackmans' counsel need only have sought the permission of these directors' separate counsel.

Indeed, it would create an anomalous result if counsel for the Jackmans, in representing them in a dissolution action against the corporation, could not, because the corporation forbade it, contact the directors his clients appointed to the corporation's board. This sort of attempt by a corporation to create an automatic representation of a director, without an actual attorney-client relationship, thereby shielding him or her from informal investigation or discovery, is contrary to attorney ethical rules. "[I]t is clear that not all corporate employees are necessarily encompassed within the attorney-client privilege, just as rule 2-100 does not bar contact with all corporate employees. For example, it is possible in any given case that a corporate officer or director covered by rule 2-100 may not be privy to information protected by the attorney-client privilege, while a lower level employee who is not shielded from contact under rule 2-100 may be in possession of substantial privileged information. However, this does not enable corporate counsel to automatically assert the privilege as to every corporate employee and on that basis enjoin opposing counsel from any and all contact with employees not covered by rule 2-100." (*Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131, 143 [261 Cal.Rptr. 493]; see also ABA Formal Ethics Opns., formal opn. No. 95-396 (1995) [general counsel cannot assert blanket representation of all corporate employees]; *Terra International, Inc. v. Mississippi Chemical Corporation* (N.D.Iowa 1996) 913 F.Supp. 1306, 1317 ["[A]n employer cannot unilaterally create or impose representation of employees by corporate counsel. . . . '[A]utomatic representation' . . . would . . . impede the course of investigation leading to . . . the filing of a lawsuit"].)

La Jolla Cove asserts that because active directors of corporations like Durisoe and Baxter are intimately involved in the running of the company and may be privy to confidential communications concerning the litigation and divulge them to opposing counsel, an absolute bar should exist as to ex parte communications. This contention is unavailing.

It is true that in the ordinary case a director's interests would be synonymous with that of the corporation, he or she might be privy to confidential information concerning the litigation, and he or she would be deemed to be represented by the corporation's counsel. However, that is not the case where, as here, there is a closely held corporation and an actual conflict has arisen between the corporate majority on the one hand, and the minority, represented by its elected directors. Corporate counsel's duty is first and foremost to the entity, not its directors or officers. Therefore, just as corporate counsel cannot represent the dissident shareholders/directors, corporate counsel also has no

duty to disclose privileged information to those with which the corporation has a dispute. Indeed, as discussed above, in such situations corporate counsel may even *use* any confidential information the corporation obtained from the dissident di rector/shareholder before the dispute arose. (*Meehan v. Hopps, supra,* 144 Cal.App.2d at p. 293 [director/stockholder whose position required divulgence of information to corporate counsel could not disqualify counsel from representing corporation in subsequent suit against director/stockholder].) If there is a concern that a dissident director might disclose confidential communications concerning the litigation, the corporation can form a litigation committee to discuss litigation matters in confidence without the presence of directors or shareholders who are adverse to the corporation's position.

We recognize that even adverse directors continue to owe duties to a corporation, and that there is a potential for the disclosure of confidential information if an adverse director can be contacted by an attorney representing a dissenting shareholder. However, to the extent that attorney-client privileged material is actually passed by a director to counsel suing the corporation, the corporation has remedies regardless of whether rule 2-100 has been violated. As we explained in *Snider*, regardless of whether there has been a violation of rule 2-100, "If an attorney violates the attorney-client privilege 'the court may disqualify him or her from further participation in the case [citation] and, under certain circumstances, may exclude improperly obtained evidence or take other appropriate measures to achieve justice and ameliorate the effect of improper conduct.' [Citation.]" (*Snider, supra,* 113 Cal.App.4th at p. 1212.) If a director, represented by separate counsel because he is in conflict with the corporation, in fact discloses confidential corporate information to a party suing the corporation, the corporation would thus have a remedy against the director and separate counsel. Directors (and their separate counsel) in positions adverse to their corporation must act with prudence to avoid violating remaining fiduciary duties owed to the corporation, and not to divulge confidential information. Separate counsel must ensure that the director recognize and abide by his or her duties to the corporation. In most cases it would be advisable and prudent for separate counsel to consult with the corporation's counsel before allowing the director to have contact with counsel suing the corporation, to ensure that attorney-client privileged communications or other confidential information is not disclosed.

La Jolla Cove cites the case *Mills Land & Water Co. v. Golden West Refining Co.* (1986) 186 Cal.App.3d 116 [230 Cal.Rptr. 461] (*Mills*) in support of its position that *no* active directors may be contacted without the permission of corporate counsel. The *Mills* case does not support their position based upon on the facts of this case.

In *Mills,* a case decided under former rule 7-103, the court concluded that the former rule prohibited ex parte contact with a corporation's former president who remained on the board of directors. As the court stated: "As a current director, [the former president] is entitled to attend board meetings where the litigation may be discussed, perhaps with counsel. . . . The question is not simply whether [the former president] was in a position to bind [the corporation] in some fashion. His position makes him potentially privy to privileged information about the litigation." (*Mills, supra,* 186 Cal.App.3d at p. 128, italics & fn. omitted.)

However, there are a few facts that easily distinguish the *Mills* case from the present one. First, the director there did not have separate counsel. Further, there was no indication that the director was adverse to the corporation on the subject matter of the litigation. In that case, the director did not represent the interests of a minority shareholder seeking the dissolution of a corporation. As we emphasized above, in most situations a director of a corporation may *not* be contacted by opposing counsel without the permission of corporate counsel. It is only in the situation where the director has retained separate counsel that rule 2-100 allows ex parte contact upon consent of that counsel.

 Further, *Mills* was decided under former rule 7-103, the predecessor to rule 2-100, which was interpreted by courts as creating a blanket rule against contact with *any* constituents of a corporation in order to protect against possible revelation of attorney-client privileged information. (*Mills, supra,* 186 Cal.App.3d at p. 128; see also *Bobele v. Superior Court* (1988) 199 Cal.App.3d 708, 714 [245 Cal.Rptr. 144] ["Plaintiffs may not contact ex parte any current employees" of defendant organization].) However, as we noted in *Snider,* when rule 2-100 was enacted in 1988 to replace rule 7-103, the drafters rejected such a blanket prohibition. Instead, rule 2-100 evidenced the drafters' intent to balance "the competing policies of protecting confidential communications and allowing discovery of factual matters concerning the litigation." (*Snider, supra,* 113 Cal.App.4th at p. 1211.) To the extent that the *Mills* decision relied upon the blanket proscription against ex parte contacts with any members of a corporation followed under former rule 7-103, it is no longer good law. (*Snider, supra,* 113 Cal.App.4th at pp. 1199–1200, 1211.)[6]

La Jolla Cove also cites to California State Bar Committee Formal Opinion, No. 1991-125, which held that it is improper for an attorney to have

---

[6] La Jolla Cove also quotes the recent decision in *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719 [135 Cal.Rptr.2d 415] for the proposition that opposing counsel cannot have any contact with directors of a corporation. However, the quoted passage came from the Court of Appeal's recitation of one party's contention in that case, not the court's holding. (*Id.* at pp. 730–731.)

ex parte contact with a dissident director, represented by separate counsel, without first obtaining the consent of corporate counsel. However, that opinion relied heavily upon the United States Supreme Court's decision in *Upjohn Co. v. United States* (1981) 449 U.S. 383 [66 L.Ed.2d 584, 101 S.Ct. 677], and *Mills, supra,* 186 Cal.App.3d 116, in reaching its conclusion. The reasoning of both of those opinions that supported a narrow reading of former rule 7-103 was rejected by the drafters of 2-100, who sought a more balanced approach that considered not only a corporation's desire to protect privileged information, but also an attorney's need for discovery. (*Snider, supra,* 113 Cal.App.4th at pp. 1199–1200, 1211.) Opinion No. 1991-125 also rejected, in one sentence, the comment to ABA Model Rule 4.2 that contact is permissible if a corporate constituent's counsel approves. (State Bar Formal Opn., No. 1991-125, *supra,* at p. 2.) The sole basis for its rejection of that comment was the statement that the ABA Model rules "do not supersede the California Rules of Professional Conduct." (*Id.* at p. 3.) However, as we stated, *ante,* since there is nothing inconsistent between the language of rule 2-100 and ABA Model Rule 4.2, the comment to Model Rule 4.2 is persuasive authority. We note finally, as the State Bar opinion itself does, that the opinion was advisory only and not binding upon courts.

 We conclude that counsel for the Jackmans, under the facts of this case, did not violate rule 2-100 by obtaining and using declarations from directors Durisoe and Baxter because their separate counsel gave permission for such contacts to the Jackmans' counsel.[7]

### 2. *Evidence of actual disclosure of confidential information*

We further conclude that even if counsel's contacts were in violation of rule 2-100, the court did not abuse its discretion in refusing to disqualify the Jackmans' counsel, as there is no evidence that any confidential information was disclosed to their counsel, and disqualification is not otherwise necessary to preserve the integrity of the judicial process.

"The attorney-client privilege provides for the nondisclosure of confidential communications between a lawyer and his/her client. (Evid. Code, § 954.) The communication must be intended by the client to be treated in confidence. Confidential communications include not only information given from a client to the attorney, but also the legal opinions and advice tendered by the attorney. (Evid. Code, § 952.)

---

[7] We recognize that the Jackmans claim that there was no contact and that Lawrence Jackman obtained the declarations on his own. However, based upon our decision that any alleged contact was not in violation of rule 2-100, we need not decide whether the evidence showed actual ex parte contact between the Jackmans' counsel and Durisoe and Baxter.

"Once a party claims the attorney-client privilege, the communication sought to be suppressed is presumed confidential. A party opposing the privilege has the burden of proof to show the communication is one not made in confidence. (Evid. Code, § 917.) However, the party claiming privilege has the burden to show that the communication sought to be suppressed falls within the terms of the statute. [Citations.] It is also established that a communication which was not privileged to begin with may not be made so by subsequent delivery to the attorney. [Citation.]" (*Alpha Beta Co. v. Superior Court* (1984) 157 Cal.App.3d 818, 824–825 [203 Cal.Rptr. 752].)

Here, the showing made by La Jolla Cove at best demonstrated that Durisoe and Baxter possessed certain information protected by the attorney-client privilege, but was inadequate to prove that any protected communications were divulged by them to the Jackmans' counsel. (*Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp., supra,* 6 Cal.App.4th at pp. 1264–1265.) "[W]e question whether a protective or suppression order is warranted by showing only a violation of rule 2-100, without an additional showing that the violation led to the disclosure of confidential communications protected by the attorney-client privilege [citation] or created an unfair advantage, or impacted the fairness of the trial or the integrity of the judicial system." (*Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 111, fn. 5 [37 Cal.Rptr.2d 843], italics omitted.)[8]

"Motions to disqualify counsel present competing policy considerations. On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. [Citations.] On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement. A client deprived of the attorney of his choice suffers a particularly heavy penalty where, as appears to be the case here, his attorney is highly skilled in the relevant area of the law." (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853].) Based upon the evidence before the court on La Jolla Cove's motion to disqualify, it did not abuse its discretion in refusing to disqualify attorneys Micheli and Fabiano as counsel for the Jackmans in this matter.

---

[8] Indeed, La Jolla Cove has presented no evidence that anything of any impact to the litigation was disclosed to Durisoe and Baxter or why the evidence allegedly disclosed to them in their roles as directors of the corporation dictates the disqualification of counsel for the Jackmans.

## DISPOSITION

The petition for writ of mandate is denied. The order staying the application to appoint a receiver issued on March 18, 2004, and the order staying all proceedings in the trial court issued on April 4, 2004, are vacated. The parties are to bear their own costs in the writ proceedings.

Benke, Acting P. J., and Haller, J., concurred.

Petitioner's petition for review by the Supreme Court was denied November 10, 2004. Chin, J., was of the opinion that the petition should be granted.