[No. A110521. First Dist., Div. Three. Mar. 28, 2006.]

In re ANTOINE D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANTOINE D., Defendant and Appellant.

## Counsel

Leslie Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PARRILLI, J.**—Appellant Antoine D., a ward of the juvenile court, moved to modify his commitment to the California Youth Authority (CYA) under Welfare and Institutions Code sections 778 and 779.[1] The juvenile court denied the motion based on concern that it would lose jurisdiction over appellant were it to modify his CYA commitment. On appeal, appellant claims the juvenile court's ruling was an abuse of discretion because: (1) the court would not have lost jurisdiction by granting the motion, and (2) in any event, loss of jurisdiction was an improper basis for denying the motion. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2002, appellant, then 17 years old, approached victim Adalvero Roman as he was driving into a parking space on an unlit block of

---

[1] Unless otherwise stated, all statutory references herein are to the Welfare and Institutions Code.

Beaver Street, near Market Street in San Francisco. Holding what appeared to be a gun in his right hand, appellant ordered Roman out of the vehicle and to turn over his wallet. Appellant took about $26 from Roman's wallet and told him to "[w]alk that way and don't turn around or I'll blast your head off." He then drove off in Roman's vehicle, where police found and arrested him about 15 minutes later. Roman later identified appellant at a "cold show" as the perpetrator of the crime.

Appellant was charged with three felonies: second degree robbery, carjacking, and criminal threats. Appellant admitted the robbery charge, and the other charges were dismissed. In September 2002, the juvenile court declared wardship over appellant, and committed him to CYA for a period of confinement at the Herman G. Stark Youth Correctional Facility (Stark Facility) up to six years eight months.[2]

On March 7, 2005, after about two and a half years of confinement, appellant filed a motion to modify his CYA commitment—specifically, to vacate it—on the ground CYA had failed to keep him safe or provide him adequate educational and treatment services. As an alternative placement, appellant, a bisexual, requested to be sent for probation to the Ark House in San Francisco, a transitional living facility designed to meet the needs of homeless lesbian, gay, bisexual and transgender young adults.

In moving to vacate his CYA commitment, appellant argued he had been, and would continue to be, subjected to serious acts of physical and mental abuse from CYA staff and wards based on his sexual orientation. Since being confined to the Stark Facility, appellant had, among other things, been cut severely in the face by a ward with a razor blade; confined by CYA to his cell and excluded from school and other group activities "for his own safety" for up to 23 hours a day nearly every day for several weeks; forced by two wards to perform oral copulation on another ward; and singled out repeatedly by staff and wards based on his sexual orientation. Appellant also argued he had not received an adequate education at CYA, an issue plaintiff conceded at the hearing. By January 2005, when appellant was 20 years old, he had completed only 99 of the 200 credits required to earn a high school diploma, in part because CYA had at times removed him from school out of concern for his safety.

---

[2] Appellant had on several previous occasions been declared a ward of the juvenile court for offenses, including assault by means of force likely to cause bodily harm and grand theft.

The juvenile court denied appellant's motion on April 20, 2005, reasoning that, under section 607, it would lose jurisdiction over him were it to set aside the CYA commitment. But for "that reason alone," the juvenile court stated, "[it] would have no problem doing what has been requested."

On appeal, appellant claims the juvenile court misinterpreted section 607 in denying his motion. We agree.

## DISCUSSION

### A.  *Welfare and Institutions Code Section 607.*

We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396 [4 Cal.Rptr.3d 809]; *In re Darryl T.* (1978) 81 Cal.App.3d 874, 877 [146 Cal.Rptr. 771].) We review matters involving statutory interpretation, however, as a matter of law. (*In re Wanomi P.* (1989) 216 Cal.App.3d 156, 165 [264 Cal.Rptr. 623].)

■  When a juvenile is declared a ward of the juvenile court, the juvenile becomes "subject to its continuing jurisdiction." (*People v. Sanchez* (1942) 21 Cal.2d 466, 470–471 [132 P.2d 810].) Section 602 provides that any person who is under the age of 18 years when he or she violates any law of this state "is within the jurisdiction of the juvenile court, which may adjudge [him or her] to be a ward of the court." Further, section 607 permits the juvenile court to retain jurisdiction over a ward until he or she turns 21 years old (§ 607, subd. (a)), or 25 years old if the ward "was committed to the Department of the Youth Authority" for a crime "listed in subdivision (b), paragraph (2) of subdivision (d), or subdivision (e) of Section 707 . . . ."[3] (§ 607, subd. (b).) Section 607 also bars the juvenile court from discharging from its jurisdiction a ward committed to CYA so long as the ward remains under CYA jurisdiction. (§ 607, subd. (c).)

---

[3] Section 607 provides in relevant part: [¶] "(a) The court may retain jurisdiction over any person who is found to be a ward or dependent child of the juvenile court until the ward or dependent child attains the age of 21 years, except as provided in subdivisions (b), (c), and (d). [¶] (b) The court may retain jurisdiction over any person who is found to be a person described in Section 602 by reason of the commission of any of the offenses listed in subdivision (b), paragraph (2) of subdivision (d), or subdivision (e) of Section 707 until that person attains the age of 25 years if the person was committed to the Department of the Youth Authority. [¶] (c) The court shall not discharge any person from its jurisdiction who has been committed to the Department of the Youth Authority so long as the person remains under the jurisdiction of the Department of the Youth Authority, including periods of extended control ordered pursuant to Section 1800. . . ."

Here, the juvenile court denied appellant's motion to modify his CYA commitment on the ground that, under section 607, it would lose jurisdiction over him were it to grant the motion. Specifically, the court reasoned that, under subdivision (c), vacating appellant's CYA commitment would eliminate subdivision (b) as a source of jurisdiction because he would no longer meet the provision's requirement that "the ward was committed to [CYA]."[4] Because appellant was 22 years old when he sought modification, subdivision (a) was already eliminated as a source of jurisdiction.

■ Appellant offers a contrary interpretation. He argues the juvenile court retains jurisdiction over him until age 25 because he was committed to CYA for second degree robbery, a crime "listed in subdivision (b) . . . of Section 707 . . . ." (§ 607, subd. (b).) The court's jurisdiction continues, appellant reasons, regardless of whether his commitment is subsequently vacated or modified. Moreover, subdivision (c) is not to the contrary. It mandates retention of jurisdiction in certain cases but nowhere limits the court's jurisdiction. We agree.

■ When interpreting a statute, we ascertain the Legislature's intent in order to effectuate the purpose of the law. (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614 [9 Cal.Rptr.3d 503]; *In re Tino V.* (2002) 101 Cal.App.4th 510, 513 [124 Cal.Rptr.2d 312].) We begin with the statute's language. " ' "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature." ' " (*In re Tino V., supra,* 101 Cal.App.4th at p. 513, quoting *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; see also *In re Charles G., supra,* 115 Cal.App.4th at p. 614.) We examine the language " ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." . . .' " and " '. . . harmoniz[ing] "the various parts of [it] . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*In re Charles G., supra,* 115 Cal.App.4th at p. 614, citations omitted.) In so doing, we avoid interpretations that would produce absurd results, which we presume the Legislature did not intend. (*Ibid.,* citing *People v. Mendoza* (2000) 23 Cal.4th 896, 908 [98 Cal.Rptr.2d 431, 4 P.3d 265].)

■ Thus, to determine whether the juvenile court below misinterpreted section 607, we consider as a whole the statutory framework for juvenile delinquency. In so doing, we keep in mind its purpose: "(1) to serve the 'best

---

[4] There appears to be no dispute appellant meets subdivision (b)'s requirement that his crime be "listed in subdivision (b), paragraph (2) of subdivision (d), or subdivision (e) of Section 707." (§ 607, subd. (b).) Appellant robbed the victim under threat of a gun, a crime listed in paragraph (3) of section 707 subdivision (b).

interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public . . . .' " (*In re Charles G., supra,* 115 Cal.App.4th at pp. 614–615, quoting § 202, subds. (a), (b), & (d).)

To accomplish the juvenile delinquency laws' stated purposes, the Legislature offers the juvenile court many statutory tools. Under section 202, subdivision (b), for example, the court may order delinquent wards to "receive care, treatment and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (See also *In re Eddie M.* (2003) 31 Cal.4th 480, 507 [3 Cal.Rptr.3d 119, 73 P.3d 1115] [acknowledging the juvenile court's "broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public"].)

■ More specifically, section 727, subdivision (a), permits the court to make "any and all reasonable orders for [a ward's] care, supervision, custody, conduct, maintenance, and support . . . *subject to further order of the court.*" (§ 727, subd. (a), italics added.) Under section 730, "any and all reasonable orders" include placing a ward on probation subject to "any and all reasonable conditions of behavior as may be appropriate under th[e] disposition." (§ 727, subd. (a); § 730; see also *In re Charles G., supra,* 115 Cal.App.4th at p. 616; *In re Ronny P.* (2004) 117 Cal.App.4th 1204, 1207 [12 Cal.Rptr.3d 675] [juvenile court has "broad discretion" to "make dispositional orders and impose conditions [of probation] under . . . section 730"].) "Section 726 explicitly acknowledges 'the power of the court to retain jurisdiction over a minor and *to make appropriate orders pursuant to Section 727 for the period permitted by Section 607.*' " (*In re Charles G., supra,* 115 Cal.App.4th at p. 615, quoting § 726.)

■ In moving below, appellant relied on sections 778 and 779, which authorize the juvenile court to "change, modify or set aside" a prior order over a ward based on changed circumstances or new evidence. This authority includes setting aside or modifying an order committing the ward to CYA where it appears CYA has failed to comply with the law or abused its discretion in dealing with the ward. (§ 779; *In re Owen E.* (1979) 23 Cal.3d 398, 406 [154 Cal.Rptr. 204, 592 P.2d 720].) Specifically, as appellant sought

here, the court may modify or vacate a CYA commitment upon a showing under section 734 that the ward is unlikely to benefit from CYA's education and treatment. (§ 779.)

■ Considering this statutory framework as a whole in light of its stated legislative purpose, it is clear juvenile delinquency laws are designed to provide the juvenile court maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it. (See *In re Aline D.* (1975) 14 Cal.3d 557, 563 [121 Cal.Rptr. 816, 536 P.2d 65] [acknowledging "a carefully conceived" statutory framework "affording the juvenile court a wide variety of choices at the dispositional phase of juvenile proceedings"], superseded on other grounds by statute as stated in *In re Luisa Z.* (2000) 78 Cal.App. 4th 978 [93 Cal.Rptr.2d 231].) ■ Accordingly, to preserve this flexibility, we interpret section 607, subdivision (b), to operate to extend jurisdiction over a ward until age 25 so long as: (1) the ward was committed to CYA; (2) for a crime listed in subdivision (b), paragraph (2) of subdivision (d), or subdivision (e) of section 707; and (3) notwithstanding a subsequent order modifying or vacating the ward's CYA commitment. Section 607, subdivision (c), which speaks of an order to discharge a ward from the court's jurisdiction rather than to modify or vacate CYA commitment, does not alter our analysis and, indeed, is inapplicable here.

A contrary interpretation of section 607, subdivision (b)—one in which vacating or modifying CYA commitments extinguishes jurisdiction—would unnecessarily limit the juvenile court's options for rehabilitating the ward. In particular, where a ward is between the ages of 22 and 25, a contrary interpretation would discourage a juvenile court from vacating a CYA commitment that may be inconsistent with the ward's rehabilitative needs for fear of losing jurisdiction. That is what happened below.

■ Accordingly, to prevent this result in the future, we conclude section 607, subdivision (b), continues to apply to a ward of the juvenile court once his or her CYA commitment has been vacated or modified. Our conclusion accords with that reached by our colleagues in the Court of Appeal, Third District in *In re Charles G.*, *supra*, 115 Cal.App.4th 608. There, the court rejected statutory interpretations of section 202, subdivision (e), and section 208.5 that would have limited the juvenile court's authority to impose new orders of punishment on a ward released on probation once he or she reaches adulthood. The court reasoned: "[I]nterpreting [those statutes] to apply only to wards who are minors at the time they are detained or committed would make

a juvenile court reluctant to place a ward on probation when the ward is days or months shy of his or her 18th birthday, since the court would have no option to detain and punish the ward if he or she violated probation after becoming an adult." (*In re Charles G., supra,* at p. 616.) Thus, the court interpreted the statutes to apply to adult wards, a conclusion more consistent with the broad statutory grant of authority to juvenile courts and with the dual statutory purpose of rehabilitating delinquents and protecting public safety. (*Ibid.*)

Similarly, we conclude interpreting section 607, subdivision (b), to continue to operate once a ward's CYA commitment is vacated or modified is more consistent with the juvenile court's authority set forth in sections 726, 727, 730, 778 and 779. It is also better suited to meet the dual statutory purpose of rehabilitating juvenile delinquents and protecting public safety. Because we reject the juvenile court's contrary interpretation and remand for the court to exercise its jurisdiction to rule on modification of appellant's CYA commitment, we need not consider his alternative argument that lack of jurisdiction was an improper basis for denying modification.

### B. *Mootness.*

With this appeal pending, on July 6, 2005, appellant was released from the Stark Facility on parole. Plaintiff claims that renders this appeal moot. We disagree.

█ An appeal is moot, and should be dismissed, when any ruling by this court would not have practical impact or provide the parties effectual relief. (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [92 Cal.Rptr.2d 268]; *La Jolla Cove Motel and Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 781 [17 Cal.Rptr.3d 467].) Here, in seeking modification of his CYA commitment, appellant requested to be placed on probation at the Ark House subject to the court's supervision. Appellant's release on parole did not afford him that relief.

█ Plaintiff is correct that appellant is no longer physically confined by CYA. But that does not mean he is no longer committed to CYA. As our Supreme Court has explained, upon commitment to CYA, a ward remains under the juvenile court's jurisdiction, but his or her status " 'drastic[ally] change[s].' " (*In re Allen N.* (2000) 84 Cal.App.4th 513, 515 [100 Cal.Rptr.2d 902]; see also § 1704.) For the duration of the CYA commitment, the ward's treatment and rehabilitation—including physical

confinement and parole—are placed under the direct supervision of CYA rather than the juvenile court. (*In re Allen N., supra,* 84 Cal.App.4th at p. 515; see also §§ 780, 1766.) Moreover, while the juvenile court retains jurisdiction during CYA commitment to vacate or set aside the commitment (§§ 778–779), or to make other reasonable orders for the ward's care or treatment (§§ 727, 730), its authority may be invoked only "where it appear[s] that 'CYA has failed to comply with law or has abused its discretion in dealing with a ward in its custody.' " (*In re Allen N., supra,* 84 Cal.App.4th at pp. 513, 516 & fn. 4, quoting *In re Owen E., supra,* 23 Cal.3d at p. 406; see also *In re Ronald E.* (1977) 19 Cal.3d 315, 327 [137 Cal.Rptr. 781, 562 P.2d 684]; *In re Robert W.* (1991) 228 Cal.App.3d 32, 34 [279 Cal.Rptr. 625].)

Thus, when appellant's confinement ended, he remained under CYA commitment as a parolee and subject to its direct supervision. As such, if appellant were to violate his parole terms, CYA would be authorized to reconfine him. (§ 1766.) Absent a showing CYA violated the law or abused its discretion in dealing with appellant, the juvenile court could not interfere. (*In re Allen N., supra,* 84 Cal.App.4th at p. 516.)

But to the contrary, were the juvenile court on remand to vacate appellant's CYA commitment, it would regain direct supervision over him. (*In re Allen N., supra,* 84 Cal.App.4th at pp. 515–516.) Without requiring any showing that CYA violated the law or abused its discretion, the court could make "any and all reasonable orders for [appellant's] care, supervision, custody, conduct, maintenance, and support"—including an order placing him under the supervision of a probation officer at a "suitable licensed community care facility" like Ark House. (§§ 727, subd. (a), 730; see also *In re Ronny P., supra,* 117 Cal.App.4th at p. 1207 [juvenile court has "broad discretion" to "make dispositional orders and impose conditions [of probation] under . . . section 730"].) Any such order would then be "subject to further order of the court" for the duration of appellant's wardship. (§ 727, subd. (a); see § 202, subd. (b).) In particular, should appellant violate probation, the court could order him sent to a foster home or other appropriate institution, or commit him back to CYA. (§ 777.)

Thus, were the juvenile court on remand to grant his motion, appellant would receive effectual relief notwithstanding his release on parole. Accordingly, this appeal is not moot. (Cf. *In re Charles G., supra,* 115 Cal.App.4th at p. 611 [dismissing appeal as moot where ward's confinement *and* probation had terminated].)

## DISPOSITION

The order denying modification of appellant's CYA commitment is reversed. The case is remanded to the juvenile court, so that it may exercise its jurisdiction and rule on the motion to modify.

McGuiness, P. J., and Pollak, J., concurred.