Filed 12/12/14  In re A.A. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>A.A.,<br><br>          Defendant and Appellant. | A141745<br><br>(Contra Costa County<br>Super. Ct. No. J10-00324) |

A.A. (Minor) appeals a dispositional order of the juvenile court committing him to the Youthful Offender Treatment Program (YOTP) after he pleaded no contest to unlawfully possessing a loaded firearm.  He contends the juvenile court abused its discretion by failing to inquire further into other possible placements.  Finding no abuse of discretion, we shall affirm the order.

## I.  BACKGROUND

### A.  The Current Offense

The Contra Costa County district attorney filed a supplemental juvenile wardship petition on February 24, 2014 (Welf. & Inst. Code,[1] § 602, subd. (a)) alleging Minor, then 17 years old, had actively participated in a criminal street gang (Pen. Code, § 186.22, subd. (a)) and unlawfully possessed a loaded firearm while a member of a criminal street

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

gang (Pen. Code, §§ 25850, subds. (a) & (c)(3)). The petition also alleged ten prior offenses, and alleged that Minor had admitted a count of possessing a sawed-off shotgun in April 2013. (Pen. Code, § 33210.) On the same date, the Contra Costa County probation department filed a notice of probation violation hearing, alleging Minor had violated the terms of his probation by being away from his home without his parent or guardian during the hours of his curfew. According to an accompanying probable cause declaration and the later probation department's report, an officer had stopped a vehicle with faulty license plate lamps and expired registration at about 8:44 p.m. on February 21, 2014. He saw two people in the front seat and Minor in the back seat. All three of them were wearing red clothing, which is typical of members of the Norteño street gang, and had tattoos identifying themselves as Norteños. The officer noticed a shotgun between the front seat passengers. The gun was loaded with live ammunition. An unloaded shotgun was found in the trunk, along with a scale and a bag of marijuana. A search of defendant's phone showed pictures of both shotguns with gang memorabilia around them and of Minor holding the same gun that was found in the vehicle.

Minor pled no contest to one felony count of unlawfully possessing a loaded firearm (Pen. Code, § 25850, subd. (a)), and the remaining counts were dismissed.

## B. Prior Juvenile Court History

Minor first came to the attention of the juvenile court in April 2010, when the district attorney filed a petition pursuant to section 602 alleging Minor, then 13 years old, had committed first degree residential burglary in September 2008 (Pen. Code, §§ 459 & 460, subd. (a)) and possessed a weapon on school grounds in November 2009 and January 2010 (Pen. Code, § 626.10, subd. (a)). According to the probation officer's report, Minor and a co-defendant stole items from the home of a friend's mother in 2008. Minor successfully completed a diversion program through the police department. In November 2009, he was found in possession of a BB gun on school grounds, and was again given diversion through the police department but failed to complete it. In January 2010, he was found with a switchblade knife on campus, and the district attorney thereafter filed the original wardship petition.

2

In May 2010, Minor was cited for possession of methamphetamine, and admitted possessing the drugs. The following month, he tested positive for THC and was detained in juvenile hall. The district attorney filed an amended petition adding a count charging possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a).) Minor was released to his mother in July 2010.

In October 2010, the juvenile court sustained the allegations that Minor had possessed a weapon on campus and possessed a controlled substance. The following month, Minor was adjudged a ward of the court. Among his terms of probation, he was subject to a curfew and was prohibited from having gang associations and from possessing or using drugs, alcohol, or weapons.

In January 2011, Minor was involved in a fight between Norteño gang members wearing red and Sureño gang members wearing blue. Minor and a co-defendant had approached the other minors to instigate the fight. Police officers who responded to a report of the fight found Minor in possession of a four-inch pocket knife.

The next month, Minor and another person were asked to leave a shopping mall when they tried to spit on a female. They were told they would be arrested for trespassing if they returned. They went back to the mall, but fled when security officers tried to arrest them. Minor was stopped by police officers in the parking lot. He smelled of alcohol and was found to be very intoxicated. Minor was released to his mother.

A second amended petition was filed in April 2011, alleging Minor had carried a switchblade knife (former Pen. Code, § 653k[2]), resisted, obstructed, or delayed a peace officer (Pen. Code, § 148, subd. (a)(1), and been intoxicated in public (Pen. Code, § 647, subd. (f)). The juvenile court sustained the counts that alleged Minor resisted a peace officer and was intoxicated in public, and in May 2011 committed Minor to the county's ranch program, Orin Allen Youth Rehabilitation Facility (OAYRF), for a six-month program. Under the terms of his probation, Minor was again ordered to use no drugs or

---

[2] Pen. Code section 653k was repealed operative January 1, 2012. (Stats. 2010, ch. 711, § 2, p. 4138 & § 10, p. 4381.) Its provisions are now found without substantive changes at sections 16965, 17235, and 21510.

alcohol, to submit to drug testing, not to possess or use weapons, and to have no gang associations.

In both June and September 2011, Minor was removed from OAYRF, and later returned with additional time added to his program, after being involved in gang-related fights. While at the program, he completed gang diversion, anger management, and a substance abuse program, and participated in a program called Senior Tutors. He was released from OAYRF in February 2012.

In August 2012, Minor tested positive for alcohol, was found in the company of a person with whom he had been ordered not to associate, and was in possession of gang paraphernalia (a red bandana). He was placed on home supervision and ordered to attend an outpatient substance abuse program, which he completed.

The probation officer filed a notice of probation violation hearing (§ 777) in February 2013, alleging Minor had been seen in a car with three other males wearing a red hat, that his mother said he had been out after curfew, and that he had missed a drug test. A second notice alleged that on February 26, 2013, Minor had been found with gang writings in his room, specifically a red bandana with the number 14 written on it. The district attorney filed a supplemental wardship petition in March 2013 alleging Minor, then 16 years old, had unlawfully possessed a sawed-off shotgun. (Pen. Code, § 33210.) After a contested hearing, the juvenile court sustained the allegations of the supplemental petition, committed Minor to OAYRF for nine months, and imposed conditions of probation that included not possessing weapons. At OAYRF, Minor participated in gang diversion, substance abuse treatment, counseling sessions with OAYRF staff and county mental health staff, and programs called Thinking for Change, Impact of Crime on Victims, and Senior Tutors. He was released in January 2014 and committed the current offense a month and a half later.

## C. Minor's Placement

The probation department's report recommended that Minor be removed from his parents and placed in a county institution for a maximum term of four years, eight

4

months, or until he reached age 21, and that he participate in YOTP and complete all phases of the program.

When asked what result he wanted at his dispositional hearing, Minor told the probation officer he needed help and would like to go to "Placement." He said he would like to get out of the area, acquire vocational skills, and improve his social and interviewing skills. Minor had all the credits required to graduate high school, but he still needed to pass his exit exams. Minor's mother wanted him to return home, but thought she should move out of the area to get Minor away from the friends with whom he had been associating.

The probation department had assessed Minor's risk for reoffending using the Juvenile Assessment and Intervention System (JAIS). It had concluded he was at high risk for reoffense and would benefit from the "Limit Setting" supervision strategy. The goals of this type of supervision were substituting "legal means to achieve money, power, and excitement"; working to "change attitudes and values so that talents and skills are used in a pro-social manner"; and "[p]rotect[ing] the public through strict surveillance, prevention, and early detection of violations."

The director of OAYRF had screened Minor for another commitment to OAYRF and had found him inappropriate because he had already spent a significant amount of time there and the program had not been effective for him. Minor was screened with the supervisor of the Placement Unit, and found inappropriate for Placement because he would turn 18 soon and had obtained all of his high school credits. He had been screened with the Bar-O facility in Del Norte County and was not accepted into the program. He had been screened and found appropriate for YOTP based on his JAIS score, his age, his gang involvement, his history of serious offenses, and his prior commitments to OAYRF with several probation violations.

The probation department's report explained that YOTP differed from OAYRF because in YOTP, "the minor and his custody time determine the date of release. At the OAYRF the minor knows that he will be released on his maximum date whether he has chosen to participate in the programs or not. He is not required to show any growth or

5

insight into himself or his behavior in order to be released. While in the YOTP program the minor will have to participate in the programs, learn pro-social behaviors and be able to demonstrate those skills before he can move through the three phases and be eligible for release. While at YOTP the minor would receive mental health counseling and vocational training as well as Anger Management, Thinking for Change, and Gang Diversion." The department concluded Minor would benefit from a structured environment.

At a contested dispositional hearing, the probation officer testified that, to her knowledge, Minor had not been screened for any specific placement locations other than Bar-O. She knew that Bar-O sometimes took 18-year-old residents. Very few placements took 18-year-olds. Most placements depended on foster care funding, and that funding would be unavailable after Minor passed his high school exit exams.

The probation officer did not know whether youths at YOTP were in school all day, but assumed they were required to go to school. She had been told YOTP had a vocational program, but did not know what it involved. She did not know whether YOTP's program involved college-level classes. She did not know the extent of YOTP's gang diversion program. Although Minor had had an individualized education program in the past, he did not receive special education in his commitment at OAYRF.

The probation officer agreed that Minor was entrenched in gang life and would benefit from getting away from the area.

The juvenile court concluded Minor would be a danger to the community unless he was in a locked facility and that his needs would best be met in a structured setting such as YOTP. Following the probation department's recommendation, the court committed Minor to a county institution for a period not to exceed the maximum custody time of four years and eight months, or until he reached the age of 21, whichever occurred first. The court ordered Minor to participate in YOTP, successfully complete the program, and follow treatment requirements.

## II. DISCUSSION

Minor contends the juvenile court abused its discretion in committing him to YOTP, a locked facility, instead of making further efforts to find an appropriate out-of-county placement such as a therapeutic group home, away from the gang influences that had surrounded him.

We review the juvenile court's commitment order for abuse of discretion. We indulge all reasonable inferences to support the juvenile court's order, and will not disturb its findings if they are supported by substantial evidence. (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1320; *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329–1330.)

Section 202, subdivision (b), provides that minors who are under the jurisdiction of the juvenile court as a result of delinquent behavior "shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." "[P]unishment" may include "[c]ommitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch." (§ 202, subd. (e).) In reaching a suitable disposition of a minor who has been found to be a person described by section 602, the juvenile court "shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) The purpose of this statutory scheme is "to rehabilitate juvenile offenders while both protecting the public and holding the person accountable for his misconduct." (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 182–183; see also *In re Charles G.* (2004) 115 Cal.App.4th 608, 614–615.)

Applying these standards, we see no abuse of the juvenile court's discretion. Minor was almost 18 years old. He had a lengthy history of delinquency and gang involvement, and his offenses included possessing a loaded weapon in public. The JAIS assessment indicated he was at high risk for reoffense. He had twice been committed to

the OAYRF ranch program, but after each commitment had reoffended, and he had been found inappropriate for another commitment there.  He had not been accepted into the Bar-O facility because he had been found inappropriate for placement there.  Although the probation officer did not know the extent of the educational opportunities that would be available to Minor at YOTP, the probation report indicated that at YOTP Minor would be required to participate in the programs and learn and demonstrate positive behaviors and skills in order to move through the program and be eligible for release.  Based on this record, the juvenile court could reasonably conclude that a commitment to YOTP would both serve the safety of the community and promote Minor's own welfare by holding him accountable for his actions and providing him with programs to assist in his rehabilitation.

## III.  DISPOSITION

The juvenile court's April 9, 2014 dispositional order is affirmed.


_____
Rivera, J.


We concur:


_____
Reardon, Acting P.J.


_____
Bolanos, J.*


* Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.

8