Filed 4/23/21  In re Elijah D. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ELIJAH D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ELIJAH D.,<br><br>Defendant and Appellant. | A158325<br><br>(Contra Costa County Super. Ct. No. J1700369) |

After Elijah D. pleaded no contest to one count of second-degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) and one count of grand theft (Pen. Code, § 487, subd. (c)) pursuant to a supplemental wardship petition filed pursuant to Welfare and Institutions Code section 602, the juvenile court committed the minor in the Youth Offender Treatment Program (YOTP), a locked program operated locally within the juvenile hall.

On appeal, Elijah challenges his commitment to YOTP as an abuse of the juvenile court's discretion, reasoning there is no evidence this commitment would be of probable benefit to him or that less restrictive placement would be ineffective or inappropriate.  The minor also contends the juvenile court miscalculated his custody credits.  We affirm the YOTP

1

commitment but hold that the minor is entitled to credit for all actual time spent in custody—254 days rather than the 195 days awarded by the juvenile court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Elijah is a sixteen-year-old boy who has experienced significant loss throughout his young life. He was born with methamphetamine in his system and does not have a relationship with his biological parents. T.D., Elijah's maternal aunt, officially adopted him when he was about a year and a half old. Elijah calls Ms. D. his mother and has a good relationship with her. She describes Elijah as "smart, a good communicator, helpful and active" but she mentioned "there are times when he can be disobedient and defiant." Additionally, the minor has special behavioral and educational needs, including emotional disturbed disorder, attention deficit hyperactivity disorder, and defiant disorder.

On March 20, 2017, Elijah was involved in a verbal argument during school in which he raised his shirt, exposed a firearm in his waistband, and told the victim, "Hey, you run your mouth and I'll shoot your lip". Deputies searched Elijah for a gun but did not locate one. Elijah stated he used a BB gun but, upon seeing the police, gave it to a friend. At the time, school staff reported Elijah only attended school once a week and did not fully complete his work. They also reported Elijah's lack of effort was the sole reason for his below-average grades.

On May 19, 2017, Elijah was adjudged a ward of Contra County Juvenile Court pursuant to Welfare and Institutions Code section 602 after allegations of making terrorist threats (Pen. Code, § 422) were found true. As conditions of his probation, Elijah was placed on home supervision in his

mother's home for 90 days with a curfew and ordered to refrain from knowingly using or possessing illegal drugs and to charge his GPS unit.

Elijah violated his conditions of probation throughout the months of May and July 2017. The minor left his home without permission, returned past his curfew, tested positive for marijuana, and failed to charge his GPS unit. Elijah was eventually taken into custody on June 30, 2017 and tested positive for marijuana. The minor was placed in juvenile hall in August 2017. The juvenile hall staff reported that Elijah behaved well, attended school regularly, and helped clean around the living unit.

On October 26, 2017, wardship was continued and the minor was placed in his mother's care for 45 days and ordered not to own, use, or have in his custody or possession any firearms, replica firearms, or BB guns. Elijah was also ordered to complete multi-systemic therapy and therapeutic behavior therapy through wrap around services. By April 12, 2018, the probation department had issued Elijah's seventh notice for failing to obey court orders. He regularly missed school even though it was held at his residence. He did not comply with court ordered terms and conditions. Elijah's mother informed probation of his poor attitude and behavior. She also reported that the minor stole his uncle's car.

When asked about placement options for Elijah, mother stated she would rather have Elijah committed to OAYRF than a home setting out of fear that he would run away and get into more trouble. Mother also preferred that Elijah be placed outside of the Bay Area because he would be a flight risk otherwise. The probation department was "very concerned" with the minor's lack of compliance with court orders, continued association with older kids/adults his mother did not approve of, and marijuana use. Additional violations were filed in March and April 2018, resulting in the

3

minor being sent to the Orin Allen Youth Rehabilitation Facility in Contra Costa County (OAYRF) in May 2018. However, because Elijah was prescribed psychotropic medication, he could not remain in OAYRF's supervision and care and was ordered to home placement in June 2018.

The court placed Elijah at the Boys Republic in June 2018. The minor absconded from Boys Republic during a home pass in November 2018. The court then placed Elijah at Courage to Change in January 2019, where he tested positive for benzodiazepine that same month. Elijah remained in Courage to Change until he absconded during a home pass in June 2019.[1]

On August 3, 2019, Contra Costa officers were dispatched to a report of a robbery that had occurred in Martinez a few days prior. The victim reportedly met up with Elijah along with another minor and a male adult, and they drove to Franklin Canyon to smoke marijuana. Upon arrival, Elijah ordered the victim out of the car, pointed a gun to his chest, and took his backpack containing $100 in cash. During the incident, Elijah told the victim he would "put two in your chest." After the robbery, the three drove the victim home as though nothing had happened.

When the officers returned to juvenile hall with the other minor, they noticed Elijah attempting to turn himself in through the front lobby for his outstanding warrant regarding his unauthorized absence from Courage to Change. Upon hearing about Elijah's recent incidents, mother felt that he was not ready to come home. She believed Elijah could benefit from a short-term residential treatment program because of the therapeutic services they offer.

---

[1] The minor requests that this court take judicial notice of the distance between his mother's home in Bay Point and the locations of Boys Republic and Courage to Change. We decline his request as unnecessary to our resolution of his appeal.

4

Under the circumstances, probation concluded that "Elijah has not responded positively on a long-term basis to any attempt to rectify his behavior in the community or in residential treatment." Additionally, probation reported that Elijah needs intensive supervision and appropriate behavioral treatment and mental health services in a secure setting, where he and others can remain safe, will not be tempted to abscond and his substance abuse can be prevented. Probation recommended that the minor be committed to a structured and secure program capable of delivering appropriate treatment for him.

On August 13, 2019, the minor pleaded no contest under a supplemental petition to second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) and grand theft (Pen. Code, § 487, subd, (c)).[2] During the dispositional hearing on August 29, 2019, the juvenile court committed the minor to the YOTP program based on the recommendation of probation, the comments of counsel and probation, his age, the circumstances and gravity of events, and his history. Elijah was committed for a period not to exceed the maximum custody time of five years and 45 days or until he reaches the age of 21, whichever occurs first. The juvenile court ordered Elijah to successfully complete all phases of the program, follow all requirements, and obey all rules and regulations. In consideration of Elijah's familial relationship with his mother, grandmother, and godmother, the juvenile court granted them visitations. The minor timely filed a notice of appeal on August 30, 2019.

---

[2] The juvenile court indicated that the second degree robbery count would be dismissed nunc pro tunc to August 13, 2019 if Elijah successfully completed probation.

5

## II.  DISCUSSION

### A.    *Placement Decision was not an Abuse of Discretion*

We review the juvenile court's placement decision for abuse of discretion and indulge all reasonable inferences to support its decision.  (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1320.)  However, we review the court's factual findings for substantial evidence, and thus a " ' "trial court abuses its discretion when the factual findings critical to its discretion find no support in the evidence." ' "  (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154 (*Nicole H.*).)  To determine if there was substantial evidence to support the commitment, we " ' " ' "must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' " ' " (*Ibid.*)

" 'The purpose of the juvenile court law is "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public.  If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective.  If the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents." [Citation.]' " (*Nicole H.*, *supra*, 244 Cal.App.4th at p. 1154.)

" ' "Minors under the juvenile court's jurisdiction must receive the care, treatment, and guidance consistent with their best interest and the best interest of the public. (§ 202, subd. (b).)  Additionally, minors who have committed crimes must receive the care, treatment, and guidance that holds

6

them accountable for their behavior, is appropriate for their circumstances, and conforms with the interest of public safety and protection. [Citation.] This guidance may include punishment that is consistent with the rehabilitative objectives." ' " (*Nichole H., supra*, 244 Cal.App.4th at p. 1155.)

Although section 202 " ' "emphasiz[es] the protection and safety of the public, and recogniz[es] punishment as a form of guidance that holds the minor accountable for his or her behavior'[citation] . . . . 'the Legislature has not abandoned the traditional purpose of rehabilitation for juvenile offenders,' and '[j]uvenile proceedings continue to be primarily rehabilitative.' [Citation.] Thus, '[o]ne of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the [DJF]." ' " (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 5–6.) A juvenile court may consider a restrictive commitment as a means of protecting the public safety. (*Id.* at p. 6.)

Elijah contends that the juvenile court abused its discretion by committing him to YOTP without substantial evidence on the record indicating any probable benefit to him. He also argues the juvenile court failed to adequately consider evidence of less restrictive alternatives. Having reviewed the record as described above and indulging all reasonable inferences in favor of the juvenile court's order, we reject the minor's arguments. We find credible, substantial evidence supporting the juvenile court's findings of probable benefit to the minor from a YOTP commitment and of the inadequacy of less restrictive alternatives.

First, we are unpersuaded by Elijah's argument that the juvenile court erred by committing him to YOTP despite the lack of evidence of a probable

7

benefit. Elijah asserts the juvenile court looked solely at the report probation prepared for the hearing in making its placement decision. Relying on *Carlos J*, *supra*, 22 Cal.App.5th 1, he argues that the juvenile court needed substantial evidence of probable benefit to support a commitment to YOTP— including brief descriptions of relevant programs to address those needs—and that the probation report was insufficient for this purpose.

We question the applicability of *Carlos J.* to this case, which involves a local county commitment rather than a commitment to DJJ. However, we need not reach the issue, because, even under the reasoning of *Carlos J.*, the record contains ample evidence regarding the probable benefit to Elijah by the YOTP program. Elijah's record illustrates an extensive history of probation violations, substance abuse, and juvenile offenses. According to the probation report, Elijah underwent multiple periods of home supervision, detentions in juvenile hall, participation in intensive community-based treatment services, and foster care placements offering significant services. Despite these interventions and service offerings, however, the minor continued to disobey the law, the terms of his probation, and the directives of his mother.

Probation noted Elijah's tendency to abscond from supervision and his continuing inability to make appropriate decisions and control his impulses and behavior. The report discussed how Elijah's most recent offense placed the lives of others in danger and stressed that it was not the first time he had exhibited such a dangerous disregard for others. In sum, Elijah had not responded positively to either home supervision or residential treatment over some period of time nor had he made sustained effort to rectify his behaviors in the community. According to the report, Elijah needs "intensive supervision and appropriate behavioral treatment and mental health services

8

in a secure setting, where he and others can remain safe, he will not be tempted to abscond and his substance use can be prevented. He needs educational support and skill development, he needs individual and family counseling, and would benefit from consistent psychiatric and psychological care to address his mental health symptoms."

Furthermore, the juvenile court made clear at the dispositional hearing that it considered "the comments of counsel and probation, the age of the minor, circumstances and gravity of the events, [and] the minor's history." Contrary to minor's suggestion, the court did not confine itself to the probation report alone. Notably, the juvenile court also acknowledged receipt of an objection filed by defense counsel that day, which it later expressly overruled. And although neither party discusses it, attached to defense counsel's objection is the YOTP Handbook, which provides a detailed recitation of the programs available through YOTP for minors in Elijah's circumstances.

" 'There must be some specific evidence in the record of the programs . . . expected to benefit a minor.' " (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1081; see also *In re Robert D.* (1979) 95 Cal.App.3d 767, 773 ["The specific reasons for such commitment need not be stated in the record. Rather that determination must be supported by substantial evidence contained within the record"].) We conclude that the juvenile court, in considering and overruling defense counsel's objection and its attached YOTP Handbook, properly considered the program offerings at YOTP and its probable benefit to Elijah in light of his treatment and educational needs and history of failed supervision.

Elijah further contends that the juvenile court erred by failing to consider less restrictive alternatives. The record does not support his claim.

9

During the dispositional hearing, it is clear that the court considered committing Elijah to the Boys Ranch as evidenced by its inquiry whether Elijah's use of a firearm during his offense disqualified him from participating in this facility. When the People added that their recommendation for YOTP stemmed from "[Elijah's] propensity to [go] AWOL", the court replied, "People can escape from a locked facility as well." The court then asked follow-up questions regarding the ease with which a minor can walk away from the Ranch. The court also asked the probation officer if they still used out-of-county ranches, presumably to determine if Elijah could qualify for other less restrictive placements. Probation noted that placements less restrictive than YOTP were not appropriate given the minor's escalating and violent behaviors. Thus, the record discloses that the juvenile court took into account less restrictive alternatives to YOTP, but concluded that Elijah would benefit from his placement in YOTP given his unsuccessful supervision at home or in residential facilities, escalating criminal behaviors, absconding from multiple facilities, and his need for more intensive supervision and behavioral treatment in a secured facility. We see no abuse of discretion on this record.

## B. *Miscalculation of Custody Credits*

Finally, Elijah contends, and the People concede, that the juvenile court miscalculated the minor's custody credits when determining his maximum confinement time. Welfare and Institutions Code section 726, subdivision (d) provides that a minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense which brought or continued the minor under the jurisdiction of the juvenile court. (§ 726.) "Physical confinement" means

10

placement in a juvenile hall or any institution operated by the Department of Corrections and Rehabilitation, Division of Juvenile Justice.  (*Ibid.*)

At the dispositional hearing on August 29, 2019, the juvenile court awarded 195 days of custody credit to Elijah.  However, on August 13, 2019, the probation officer had informed the court that Elijah had 238 days credit for time served.  Under this calculation, Elijah should have accrued 254 days of custody credit by the dispositional date.[3]  (See *In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1232 [holding that minor is entitled to credit against his maximum period of physical confinement for all time spent in custody].)  When, as here, the record is clear as to the actual amount of custody credits that should have been ordered, we may determine the correct amount on appeal.  (*In re J.M.* (2009) 170 Cal.App.4th 1253, 1256-1257.)  Accordingly, we conclude that the minor is entitled to 254 days of actual custody credit.

### III.  DISPOSITION

The juvenile court is ordered to file an amended dispositional order to reflect 254 days of actual custody credit to be credited against the minor's maximum period of physical confinement.  Otherwise, the juvenile court's August 29, 2019 dispositional order placing the minor in YOTP is affirmed.

---

[3] Elijah has submitted a chart on appeal, supported by citations to the record and accounting for 248 days in custody.  However, the chart failed to include the six days Elijah was placed in juvenile hall after a probation violation from April 4, 2017 to April 10, 2017 when he was placed back on home supervision.

11

_____

                              SANCHEZ, J.

We concur.

_____

MARGULIES, ACTING P.J.

_____

BANKE, J.

(A158325)

12