Filed 3/13/26  In re E.V. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>E.V.,<br><br>        Defendant and Appellant. | A173664<br><br>(Alameda County Super. Ct. No. JV-036709-01) |

E.V. (minor) appeals from a juvenile court order denying his motion to modify his placement order.  Finding no abuse of discretion, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2023, the Madera County District Attorney filed a wardship petition under Welfare and Institutions Code[1] section 602 alleging minor (then 13 years old) committed misdemeanor sexual battery (Pen. Code, § 243.4, subd. (e)(1)) "in that [minor] willfully and unlawfully touched an intimate part of Confidential Victim, against the will and for the specific purpose of sexual arousal, sexual gratification and sexual abuse."

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Minor admitted the petition as filed, and the matter was transferred to Alameda County.  In October 2023, the juvenile court adjudged minor a ward of the court and placed him in the care of the probation department "to be placed in a suitable foster home or private institution or group home/county facility."

*Minor's Placement and Progress at Starshine*

In November 2023, minor was placed at Starshine Treatment Center (Starshine) in San Bernardino, a short-term residential therapeutic program (STRTP).

In December 2023, the probation department filed a request for review of minor's placement at Starshine.  A qualified individual assessment report attached to the request documented the following.  Minor had "a history of hyperactivity, difficulties with attention, poor impulse control, poor interpersonal boundaries, oppositional/defiant behavior, impaired frustration tolerance, physical fights/aggression, making threats to harm others."  Minor had been "suspended on multiple occasions due to fighting, trespassing, disruptive behavior and using/possessing/distributing cannabis," and he had been hospitalized on two occasions for suicidal ideation.  Regarding his family, Minor "reported mistreatment in his home," and there had been approximately 40 referrals to child protective services regarding his family.  Minor's parents "d[id] not feel they c[ould] control their son's behavior in the home" as he "d[id] not follow their directions and his whereabouts [we]re often unknown."  Minor had been referred to counseling but refused to attend, and his mother "expressed concern about his poor self-control and sexualized behaviors in the home."  The report recommended minor continue in the STRTP "for his safety and the safety of others" and noted he could

2

"benefit from a structured, therapeutic environment with increased supervision while he learn[ed] new skills to manage his impulse control."

On December 22, 2023, the juvenile court found that minor's needs could not be met through placement in a family-based setting and that an STRTP or community treatment facility would provide the most effective and appropriate care setting for minor in the least restrictive environment. The court approved minor's placement at Starshine.

In April 2024, the probation department recommended continuing minor's placement at Starshine and reported the following. In November 2023, minor absconded from Starshine the day he arrived, but he returned in less than an hour. In December, he was "acting out at school: walking out of classrooms [and] tagging gang related narratives on his worksheets," although it was also reported that, aside from school, he "was respectful and easy to redirect." In January 2024, minor "was generally doing well and had no behavioral issues," except he did begin "picking on a peer and junior staff member." In February, minor "struggled with boundaries with female staff" and "used inappropriate racial language with other peers and had been disrespectful with staff." In March, minor's "grades [we]re fair," but he "was suspended for being involved with a school fight" and "continued to have the occasional issue with being disrespectful to program staff."

On April 8, 2024, the juvenile court adopted the probation department's recommendations and found the "extent of progress which has been made toward alleviating or mitigating the causes necessitating placement . . . by the youth ha[d] been minimal," and minor's parents' progress was "minimal" as well.

In September 2024, the probation department recommended that the court approve minor's continued placement at Starshine; it documented

minor's progress as follows. In April, minor "struggle[d] with behaviors at school." On April 1, minor tested positive for THC. On April 12, he was suspended from school for reportedly kicking another student in the head. On April 22, he reportedly kicked another student in the locker room and pushed him into a garbage can.

In May, minor's clinician stated several family therapy sessions had been scheduled, but minor's mother had only shown up for one session. Minor had "inappropriate conversations with family during phone calls and with other youth in person." In June, minor's clinician reported that minor "still ha[d] negative thought processes." He completed an anger management course but "continue[d] to get into verbal altercations with other youth in the home and consistently call[ed] them names." In July, minor's clinician reported he had "slowly been improving and the amount of gang talk ha[d] diminished." However, in August, the clinician reported the minor "began entering a denial stage again regarding the offense."

The September 2024 probation report further documented that minor had been involved in many physical altercations and was suspended from school. As a result, an emergency child and family team meeting was held in September to address minor's continued negative behaviors at public school in San Bernardino. "It was determined by the treatment team that the youth exhausted all opportunities to improve at school, and it would be more beneficial for the youth to be enrolled in online schooling," and minor was "moved to supervised online schooling."

On September 24, 2024, the juvenile court approved minor's continued placement at Starshine and again found minor's and his parents' progress minimal.

In February 2025, the probation department recommended that the court approve minor's continued placement at Starshine, reporting the following. Before he was removed from public school, minor "tested positive for THC and PCP after being caught vaping in the school bathroom." In October, minor was adjusting well to his new online school. He admitted to taking Percocet pills, and he "also hid THC and nicotine vape pens in his underwear waistband." In November, minor "consistently struggled with peer relations and was cited numerous times for being disrespectful to peers and staff." In December, minor had fewer negative peer interactions "but struggled to adhere to staff directives a few times." He had an attempted robbery charge pending in San Bernardino County. In January 2025, minor was "doing well in his program overall." Minor's clinician reported that minor's "parents remained in various stages of denial in regard to the offense" and, consequently, the clinician was not "able to complete the youth's safety plan with the family which in turn prevented them from being able to have unsupervised offsite visits." In February, minor continued to do well in the program. His clinician reported she and minor "recently had a good individual therapy session."

On March 6, 2025, the juvenile court approved minor's continued placement at Starshine.

In April 2025, the probation department filed a qualified individual assessment report, which noted that minor continued to "struggle[] with impulse control, interpersonal boundaries, oppositional/defiant behavior, and low frustration tolerance." It was recommended that minor continue in "an STRTP placement congregate care setting specializing in the treatment of sex offenders for stabilization," as minor still "require[d] structure, guidance, consistent boundaries, consequences and clear expectations." Under the

5

heading "barriers to family-based settings," the report noted there was concern that minor would revert to "aggressive and inappropriate behaviors" "if placed in a family-based setting at this time." (Capitalization omitted.)

On April 29, 2025, the juvenile court again approved minor's placement at Starshine, finding minor's needs "c[ould] not be met through placement in a family-based setting" and an STRTP provided the most effective and appropriate care setting for minor in the least restrictive environment.

*Minor's Motion to Modify Placement*

On June 23, 2025, minor filed a motion to modify his placement order. Minor explained that Starshine would soon shut down its program, and he asked "to be placed at home with his parents so he c[ould] continue to heal with family support and avoid the difficulties associated with moving to a new out-of-home placement." Minor argued, "the closure of [his] current placement along with his long-term, continued participation in services constitute[d] a change of circumstances" under section 778, and he claimed his rehabilitation would be "best served by strengthening family ties in the community with appropriate supportive services." (Bolding omitted.) He further asserted that his "family home is a positive and supervised environment where his parents are ready to continue to engage in therapeutic services to support [minor]'s recovery" and he "will pose no risk to public safety" in his home. The motion included a proposed "safety plan" for minor's placement at home, which suggested minor would be "supervised by his mother" and his probation officer, he would attend San Leandro High School, and he would participate in therapeutic services.

At the hearing on minor's motion two days later, the probation department reported that minor had been accepted at DN Associates (an STRTP in Fresno), which would have an opening by July 7, and minor could

stay at Starshine until he was transported to DN Associates. Probation further reported that "Starshine's safety plan ha[d] not been signed by parents because they did not fully understand the significance and seriousness of the offense and the youth's part in the offense; however, they are making strides. But placing him back in the home could undo some of the progress and accountability."

Minor's attorney argued that, given the amount of time it would likely take minor to acclimate to a new STRTP, "we're asking the court to consider a less restrictive alternative to allow him to continue with his treatment program while in the most family-like setting, which is his family home." He asserted, "It is not as if [minor] has had major behavioral incidents at Starshine. He has made slow but steady progress. So there is nothing indicating that he is a danger to the community and outpatient programming while residing at home would not be sufficient to meet his needs."

Opposing minor's motion, the prosecutor argued, "It appears that the minor has made slow, steady progress because he has been in a residential facility where he has been allowed to focus on his treatment," and if minor were returned home, "there will be distractions that were not apparent when he was at Starshine."

The juvenile court denied minor's motion to modify. Addressing minor's attorney, the court explained, "I've read your papers. I fully understand the role of juvenile court and juvenile law. And I was aware of that at the time of disposition and considered less-restrictive alternatives, including staying at home with Mom.

"The only difference now in terms of the change of circumstance is a new location. He would be able to continue his programming without starting over, and all of the available options in your safety plan were also

7

available to the Court at the disposition.  [¶] There has been some progress made by [minor] during his time at the STRTP, but there's also been some blips as well, some mistakes, shall we say, including an arrest for an attempted [Penal Code section] 211 [robbery].  So there's some issues that clearly still need to be worked on, not only for the sexual offender treatment, but maybe some behaviors as well.  And so the Court is not going to grant the motion at this time.  [¶] . . . I do not find that there is significant change of circumstances as it relates to this case and your motion is denied."

## DISCUSSION

Under section 778, subdivision (a)(1), a ward of the court "may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a ward of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

"The juvenile court's decision as to whether a previously made juvenile court order should be modified rests within the court's discretion and thus will not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Aaron J.* (2018) 22 Cal.App.5th 1038, 1057–1058 [reviewing denial of a minor's motion under section 778].)  " ' "To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice." [Citation.]  Throughout our analysis, we will not lightly substitute our decision for that rendered by the juvenile court.  Rather, we must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings where there is substantial evidence to support them.' " (*Id.* at p. 1053.)

8

Minor contends the juvenile court abused its discretion in denying his motion to modify the placement order "because there was a legitimate change of circumstances, the court's rationales for denying the motion were unreasonable, and the modification promoted [minor]'s best interests." (Bolding and capitalization omitted.) We are not persuaded.[2]

First, there is no question that a placement at DN Associates is different from a placement at Starshine, but minor is not entitled to a modification of his placement merely because he has shown a change in circumstances. Rather, the issue at a section 778 hearing is whether the change in circumstances "makes some new or changed disposition desirable or necessary for the continued welfare of the child." (*In re Corey* (1964) 230 Cal.App.2d 813, 822.) That the closure of Starshine and transfer to a different STRTP may be a change of circumstances does not demonstrate the juvenile court abused its discretion by denying minor's motion to modify.

Second, minor claims the juvenile court's reasons for denying his motion were unreasonable, were not supported by substantial evidence, and did not justify a STRTP placement. Minor reargues the reasons he believes transitioning to a new STRTP would be difficult for him and placement in an STRTP is no longer necessary for his rehabilitation. But his arguments do not show the juvenile court's contrary determination was irrational or unsubstantiated. On April 29, 2025, the juvenile court found minor's needs could not be met through placement at home—a finding minor did not contest. A report from February 2025 noted that minor's clinician reported

---

[2] As a preliminary matter, the Attorney General argues this appeal is moot because the June 25, 2025, order appealed from has been superseded by a later placement order upon periodic review. Because there is no superseding order in the appellate record, we decline to dismiss the appeal on mootness grounds.

9

she was unable "to complete the youth's safety plan with the family which in turn prevented them from being able to have unsupervised offsite visits" because minor's parents "remained in various stages of denial in regard to the offense." A report from April 2025 documented concern that minor would revert to "aggressive and inappropriate behaviors" "if placed in a family-based setting at this time." On June 25, 2025, probation reported that minor's parents had not signed "Starshine's safety plan . . . because they did not fully understand the significance and seriousness of the offense and the youth's part in the offense." This was substantial evidence supporting the juvenile court's determination that minor's needs could not be met through placement at home. The facts that minor had difficulty adjusting to Starshine and Starshine was now closing do not in any way undermine the court's determination that minor was not ready to return home.

Third, minor's assertion that modifying the placement order would promote his best interests and welfare does not demonstrate that the juvenile court's contrary determination was an abuse of discretion. "[J]uvenile delinquency laws are designed to provide the juvenile court maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it." (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1323.) In April 2025, the probation department reported that minor continued to "struggle[] with impulse control, interpersonal boundaries, oppositional/defiant behavior, and low frustration tolerance" and recommended he continue in "an STRTP placement . . . specializing in the treatment of sex offenders for stabilization" because minor "require[d] structure, guidance, consistent boundaries, consequences and clear expectations." On this record, we have no difficulty concluding the juvenile court acted within its discretion when it determined minor's continued placement in an STRTP was necessary.

# DISPOSITION

The order denying minor's June 23, 2025, motion to modify the placement order is affirmed.

_____

Miller, J.

WE CONCUR:

_____

Stewart, P. J.

_____

Richman, J.

A173664, *People v. E.V.*